422 So.2d 1109 (1982)
Jerry Wayne JENKINS
v.
ST. PAUL FIRE & MARINE INSURANCE CO., et al.
No. 81-C-0776.
Supreme Court of Louisiana.
October 1, 1982.
Rehearing Denied November 19, 1982.
John A. Richie, C. Vernon Richie, Richie & Richie, Edward O. Kernaghan, Shreveport, for applicant.
Charles E. Tooke, Alex F. Smith, George T. Allen, Mayer, Smith & Roberts, Shreveport, for respondents.
LEMMON, Justice.
This is a legal malpractice action brought against plaintiff's two former attorneys, who allegedly allowed prescription to run before filing suit on plaintiff's claim for damages for personal injuries sustained in a truck-train collision. The trial court, after a jury trial and verdict in favor of plaintiff, rendered judgment against both attorneys in the sum of $87,000. The court of appeal reversed, holding that plaintiff's negligence was a contributing cause of the collision and would have barred his recovery against the railroad company. 393 So.2d 851. We granted certiorari to review that judgment. 399 So.2d 607. The grant was prompted to some extent by the concern over the "case within a case" approach used by the court of appeal in this case and by other courts in *1110 earlier decisions. Under that approach a plaintiff in legal malpractice litigation must prove not only that the attorney was negligent in handling the client's claim or litigation, but also that the claim or litigation would have been successful but for the attorney's negligence. See King v. Fourchy, 16 So. 814 (La.1895); Dyer & Stevenson v. Drew, 14 La.Ann. 657 (La.1859); Spiller v. Davidson, 4 La.Ann. 171 (La.1849); Toomer v. Breaux, 146 So.2d 723 (La.App. 3rd Cir. 1962); Lewis v. Collins, 260 So.2d 357 (La. App. 4th Cir.1972).

I.
In the present case, the attorneys concede that they were negligent in not filing suit until two days after prescription had run.[1] The remaining question is whether the client, after proving the attorneys' negligence, must also establish the validity of the underlying claim by proving that the attorneys' negligence caused him damages and by further proving the amount of the damages.
Plaintiff contends that, once the client has established negligence on the part of the attorney, the burden should be placed on the negligent attorney to prove that the mishandled claim or litigation would have been unsuccessful.
Causation, of course, is an essential element of any tort claim. However, once the client has proved that his former attorney accepted employment and failed to assert the claim timely, then the client has established a prima facie case that the attorney's negligence caused him some loss, since it is unlikely the attorney would have agreed to handle a claim completely devoid of merit. In such a situation, a rule which requires the client to prove the amount of damages by trying the "case within a case" simply imposes too great a standard of certainty of proof. Rather, the more logical approach is to impose on the negligent attorney, at this point in the trial, the burden of going forward with evidence to overcome the client's prima facie case by proving that the client could not have succeeded on the original claim, and the causation and damage questions are then up to the jury to decide. Otherwise, there is an undue burden on an aggrieved client, who can prove negligence and causation of some damages, when he has been relegated to seeking relief by the only remedy available after his attorney's negligence precluded relief by means of the original claim.[2]
Accordingly, when the plaintiff (as in this case) proves that negligence on the part of his former attorney has caused the loss of the opportunity to assert a claim and thus establishes the inference of causation of damages resulting from the lost opportunity for recovery, an appellate court (viewing the evidence on the merits of the original claim in the light most favorable to the prevailing party in the trial court) must determine whether the negligent attorney met his burden of producing sufficient proof to overcome plaintiff's prima facie case.

II.
The accident occurred in Plain Dealing at the point where Palmetto Street crosses the track of the St. Louis Southwestern Railway Company. The configuration of the intersection (including three tracks, storage tanks, and other structures) is shown on the following exhibit (not drawn to scale), which was filed in evidence by plaintiff:
*1111 
The railroad crossing at Palmetto Street was controlled by electric signals, which were designed so that the red lights flashed and a bell rang when a train approached. There was also another railroad crossing at Highway 2, about 340 feet north of the Palmetto Street crossing. (This crossing is shown on the above sketch.)
On the day of the mid-morning accident, the weather was cold and foggy, with drizzling rain. As plaintiff drove from his home into town, the signal lights at the Palmetto Street crossing were flashing, and the bell was ringing. Plaintiff stopped his pickup truck and looked in both directions, determining that no train was coming. He then proceeded across the tracks and parked at a store approximately a block beyond the crossing, where he shopped for clothing for about 20 minutes.
Plaintiff testified: When he left the store, he proceeded west on Palmetto Street toward the railroad crossing, traveling in first gear at five to six miles per hour. Although the signal device was operating, he did not stop completely at the signal, but looked in both directions and continued forward at the same rate of speed.[3] After looking to his right when he passed the signal, he glanced again to his right as he crossed the storage tracks (15 feet beyond the signal), and the next thing he remembered was waking up in the hospital.
Other evidence established that plaintiff was struck broadside by a train traveling south on the main track at 40 to 49 miles per hour. Plaintiff never saw the train before it hit him. His windows were up, and his windshield wipers and heater blower were operating at the time, and he did not hear the train sound a whistle. Other evidence conflicted on whether the train blew its whistle.[4]
Plaintiff contends that his failure to stop at the signal was inconsequential, because his view of the main track to the north was partially obstructed by the tanks and buildings and by a boxcar parked on the storage track next to the building. However, he conceded that once he passed the signal and reached the storage track, he thereafter had an unobstructed northward view of the main track to a point a little beyond the *1112 Highway 2 crossing (340 feet away). He also admitted that he could have stopped his pickup truck "on a dime" at the slow speed at which he was traveling.
The following photograph illustrates the unobstructed northward view of a westbound motorist on Palmetto Street who had just crossed the storage tracks:

When plaintiff approached the flashing signal, he may reasonably have disregarded the malfunctioning signal as meaningless, but he was not misled into believing that he did not have to look for oncoming trains or to control his vehicle in crossing the tracks. Since there was a distance of more than 55 feet between the storage tracks and the main tracks, and since a vehicle moving at six miles per hour travels nine feet per second, it took plaintiff approximately six seconds to travel the distance between the two sets of tracks. During that six-second period of travel, he had an unobstructed view of the main track to the north. During that same six-second period, the train traveled approximately 400 feet in full view of anyone situated in plaintiff's position.
Plaintiff could have stopped his vehicle almost instantly at his rate of speed in low gear, if he had seen the approaching train at any time during the six-second period of travel between the two tracks. His failure to see the train prior to the collision indicates that he did not look to his right again after crossing the storage tracks (a fact he virtually admitted in his testimony) or that, if he did look, he negligently failed to see the plainly visible hazard.
The court of appeal held that plaintiff's undisputed conduct in failing to see what he should have seen and in driving his truck into the path of the oncoming train in plain view constituted contributory negligence. Plaintiff points out, however, that the duties breached by the railroad were duties imposed because of the expectation that some motorists will be inattentive in crossing railroad tracks.[5] Citing Outlaw v. Bituminous Ins. Co., 357 So.2d 1350 (La.App. 4th Cir.1978), plaintiff argues that foreseeable inattention should not be both the basis for *1113 imposing the duty and the reason for excusing a breach of the duty.[6]
The Outlaw decision (and others such as Baumgartner v. State Farm Mutual Auto Ins. Co., 356 So.2d 400 [La.1978] and Boyer v. Johnson, 360 So.2d 1164 [La.1978]) represented an effort, during the time that contributory negligence prevailed as an absolute bar to recovery, to reach a just result when a comparison of the respective duties of two negligent parties (and of the risks created by breaches of those duties) revealed an extreme imbalance favoring the plaintiff.[7] The circumstances of those particular cases (in each of which the plaintiff was hampered by some type of curtailed capacity) dictated that the defendant should have protected the particular plaintiff from the consequences of his own negligence. In the present case, however, the comparison of the duties imposed on and breached by the two negligent parties does not reveal such an extreme imbalance. While a passenger in the plaintiff's vehicle could perhaps have recovered from defendant (and from plaintiff), plaintiff cannot, since his claim arose before the legislative adoption of comparative negligence.
We conclude that, even viewing the evidence of the collision with the burden of proceeding shifted to the defendant, the court of appeal correctly concluded that plaintiff's substantial blameworthy conduct bars his recovery.
Accordingly, the judgment of the court of appeal is affirmed.
MARCUS, J., concurs and assigns reasons.
BLANCHE, J., concurs for reasons assigned by MARCUS, J.
DENNIS and WATSON, JJ., dissent and assign reasons.
MARCUS, Justice (concurring).
I agree with the result reached in this case but adhere to the rule that in a legal malpractice case plaintiff must prove not only that the attorney was negligent in handling his client's claim or litigation but also that the claim or litigation would have been successful but for the attorney's negligence. Accordingly, I respectfully concur.
WATSON, Justice, dissenting.
This is a troublesome case, both on the facts and the law.
On a cold, foggy, misty morning the plaintiff-motorist crossed railroad tracks where the bell and light were operating, despite the absence of any train, conducted his emergency shopping (his house had been completely burned to the ground two days prior), and returned to the same crossing. Unfortunately, a lengthy freight train, traveling at an excessive rate of speed and failing to sound its whistle for about two-thirds of the legally required distance, came along and hit plaintiff's pickup truck. Plaintiff did not see the train at all and the engineer and the brakeman did not see plaintiff's truck until about one second before impact. Needless to say, in the train-pickup collision, the party occupying the *1114 truck was severely injured, although there was no damage, as far as the record indicates, to the train.
The jury found the railroad negligent, the plaintiff not negligent, and damages of $87,000.
On the law, laying aside for the moment the questions concerning legal malpractice, the Court of Appeal determined that the railroad company was obviously negligent, but plaintiff was contributorily negligent. The verdict for plaintiff was reversed. Counsel for plaintiff presents an interesting argument: under a duty-risk analysis the Court of Appeal excuses the breach of the railroad's duty by the conduct which requires the duty. The argument is that an attentive motorist has no need for protection from locomotives which fail to sound the whistle for the prescribed distance, from an improperly operating warning light and bell, and from a train operated at an unsafe speed; the attentive motorist sees the train and avoids the collision. It is only the inattentive (contributorily negligent) motorist who needs the protection afforded by the railroad's duty and if his lack of attention places the fault on him and excuses the railroad, then the railroad really has no duty in the first place. Thus, says counsel, the duty-risk analysis will not support the Court of Appeal's decision.
However, counsel suggests a better legal analysis to solve the problem. It should be noted parenthetically that if comparative negligence were in effect as to this accident, there is no question that the negligence of the railroad far exceeds that of plaintiff and he would recover a substantial judgment. The proper solution, and the one which I would apply under the difficult facts, is fundamentally that of Baumgardner v. State Farm Mutual Automobile Insurance Co., 356 So.2d 400 (La.1978). I would parallel Baumgardner by saying that the operator of a dangerous instrumentality, such as a freight train, creates a great risk of injury to the motoring public while an automobile or pickup truck poses almost no risk to a train. Then following the Baumgardner reasoning, due to the great disparity of risk, contributory negligence is not a defense in a case such as presented.
The reversal of burden of proof espoused by the majority opinion has no significance. If this is a contributory negligence case, as held by the Court of Appeal, then the burden of proof, at least to the resolutory issue of contributory negligence, was already on the defendant lawyers.
I would hold plaintiff could have recovered from the railroad, if his case had not prescribed. Therefore, I respectfully dissent.
DENNIS, Justice, dissenting.
I commend the plurality for its improvement in the law by modifying the "case within a case" requirement by placing the burden of going forward with the evidence upon the defendant attorney once his malpractice has been established. This is certainly more just than the former rule of law. However, I think our civil code and justice require that a person whose legal rights have been permanently prejudiced by the wrongful acts of his attorney be afforded a more complete remedy. La.Civ.Code art. 2315 ("Every act whatever of man that caused damage to another obliges him by whose fault it happened to repair it.") La. Civ.Code art. 2316 ("Every person is responsible for the damage he occasions not merely by his act, but by his negligence, his imprudence, or his want of skill.").
Although the plaintiff's rights were litigious, they surely had some value before they were allowed to prescribe by his attorney. The plaintiff should be allowed to recover for the loss of this value regardless of whether he would have triumphed in a full-scale hypothetical trial. Furthermore, as suggested by Mr. Justice Watson's able dissent, it is not outside the realm of all possibility that Mr. Jenkins could have recovered at some point in the judicial process after a real trial on the merits. See Baumgardner v. State Farm Mutual Automobile Insurance Co., 356 So.2d 400 (La.1978). Had Mr. Baumgardner's attorney allowed his cause of action to prescribe, under the case within a case requirement, he would have recovered "zero" for his loss of a cause *1115 of action which ultimately was worth $31,288.17 after litigation terminating in this court.
Accordingly, in the interest of justice and the faithful application of our civil code, I would jettison the case within a case requirement. I would require that the party guilty of malpractice repair the wrong he has done to his client by paying him an amount equal to the value of the right destroyed.
With this approach, we would reach a result under our code similar to that adopted by jurisdictions which have abandoned the case within a case requirement in favor of more modern rules. See Smith v. Lewis, 13 Cal.3d 349, 118 Cal.Rptr. 621, 530 P.2d 589, overruled on the grounds Re Marriage of Brown, 15 Cal.3d 838, 126 Cal.Rptr. 663, 544 P.2d 561 (Calif.1975) (replacing the "but for" approach of "case within a case" with a lesser standard of "lost opportunity") and Fuschetti v. Bierman, 128 N.J.Super. 290, 319 A.2d 781 (New Jersey 1974) (adopting a bifurcated procedure for the resolution of the issue of "cause"). Additional proposed approaches include the "lost substantial possibility" test suggested by cases in the medical malpractice arena, Hicks v. United States, 368 F.2d 626 (4th Cir.Ct.App.1966) noted at Jensen, The Standard of Proof of Causation in Legal Malpractice Cases, 63 Cornell L.Rev. 666, 679 (1978), or the award of damages based upon "reasonable settlement value." This last approach has considerable logical appeal, since as many as 92.9% of personal injury suits are settled prior to trial. Bridgman, Legal MalpracticeA Consideration of the Elements of a Strong Plaintiff's Case, 30 S.C.L.R. 213, 234 (1979).
Because the plurality fails to resolve the major legal issue which is presented by this case in a manner which I find faithful to the precepts of our civil code and to a sense of justice, I respectfully dissent.

* * *
NOTES
[1] In the lower courts, each attorney claimed that the client had established an attorney-client relationship with the other, who was solely responsible to file the suit timely. The jury found, however, that they were solidarily liable and that one could not recover over against the other. No such claims have been urged in this court.
[2] The client's problem is frequently compounded when the attorney's negligence and the lapse of time has left a new attorney to search for stale evidence and has prevented or severely hampered thorough and effective preparation of the claim for trial.
[3] Other evidence established that the signal frequently malfunctioned and operated continuously for several hours (or even days).
[4] Several witnesses testified that they heard the train's whistle just before the train reached the Highway 2 crossing, about 340 feet north of the Palmetto Street crossing. R.S. 45:561 requires trains to sound a whistle continuously for 900 feet before a crossing.
[5] The court of appeal held that the railroad was negligent in failing to maintain the signal device, in operating the train through the town at a rate of speed which was excessive in view of the fact that the signal was not functioning properly, and in failing to commence sounding the whistle at least 900 feet before the Palmetto Street crossing.
[6] In the Outlaw case, defendant drove a golf ball in the general direction of a nine-year old golfer who was crouched behind a golf bag 172 feet away. The child lost an eye when he raised his head above the bag as defendant hit the ball. The court held that the mature golfer's duty under such circumstances was not to drive the ball at all in that general direction. Addressing the issue of the child's negligence, the court added:

"Rather than excuse contributory negligence on a last-clear-chance theory, however, we hold that the child's negligence (if any) was not contributorily (sic) negligence barring his recovery. A nine-year-old may be capable of contributory negligence, but like a 12-year-old, Plauche v. Consolidated Companies, 1958, 235 La. 692, 105 So.2d 269, he is not held to adult standards of comprehension of danger and duty of self-care. We may assume that the jury properly evaluated this child's awareness of danger and properly concluded that he was negligent. But his negligence cannot be both the foreseen risk which imposes the duty on the mature golfer not to hit the ball and at the same time a defense to an action for damages for breach of the mature golfer's duty. The youngster's leaving a place of safety cannot both impose a duty and excuse its breach."
[7] The legislative adoption of comparative negligence should largely resolve such problems.