955 So.2d 177 (2007)
RAWBOE PROPERTIES, L.L.C., and Roger T. Boes
v.
Marc G. DORSEY, Dorsey & Bossetta, and Patrick R. Bossetta.
No. 2006-CA-0070.
Court of Appeal of Louisiana, Fourth Circuit.
March 21, 2007.
Charles J. Ferrara, Metairie, LA, for Plaintiffs/Appellants.
Richard A. Weigand, New Orleans, LA, for Intervenor/Appellant, Richard A. Weigand, APLC.
Gustave A. Fritchie III, Darleene D. Peters, Irwin Fritchie Urquhart & Moore LLC, New Orleans, LA, for Defendant/Appellee.
(Court composed of Judge CHARLES R. JONES, Judge TERRI F. LOVE, Judge ROLAND L. BELSOME).
*178 BELSOME, Judge.
Plaintiffs-Appellants, Rawboe Properties, L.L.C. and Roger T. Boes, and Intervenor-Appellant, Richard A. Weigand, APLC, appeal the trial court's judgment finding that Defendants-Appellants, Marc G. Dorsey, Dorsey & Bossetta, and Patrick Bossetta, committed legal malpractice, but declining to award Appellants damages for the malpractice. We affirm.
FACTS
On October 19, 1997, a building owned by Rawboe Properties, L.L.C. and Roger T. Boes (hereafter collectively "Mr. Boes") at 516 Gravier Street in New Orleans sustained damages from a fire that originated in an adjacent building at 309 Magazine Street. Mr. Boes subsequently filed a claim with Westchester Fire Insurance Company (hereafter "Westchester") for the damages. Approximately ten days after the loss, Westchester arranged for an insurance adjustor, William Moulton, to visit the property, obtain photographs and prepare an estimate of damages. When Mr. Boes indicated to Mr. Moulton during his inspection that he believed a roof existed over part of the property prior to the loss, Westchester arranged for Leonard Quick, an expert in civil engineering, to inspect the property and take photographs as well. After the inspections, Mr. Quick and Mr. Moulton estimated that the damages caused by the fire amounted to $26,710.60.[1]
At Mr. Boes' request, a second estimate of damages was procured by Westchester from an independent contractor, Ron Wimprine of Elmwood General Contractors. Mr. Wimprine's estimate matched the amount of the estimate prepared by Mr. Moulton and Mr. Quick.[2] Thereafter, Mr. Boes signed a Sworn Statement in Proof of Loss that was executed before a notary public, affirming that the "whole loss and damage" amounted to $26,710.60 and that he was due $21,710.60.[3] Mr. Boes then commissioned his own appraisal from Louis Perrilliat of Construction South, Inc. Mr. Perrilliat's estimate, dated January 29, 1999, totaled $116,140.00, and included several items that were not listed on Westchester's two estimates. Mr. Boes subsequently hired an attorney, Marc Dorsey of Dorsey & Bossetta, to assist in obtaining this amount from Westchester.
During the course of his representation, Mr. Dorsey issued two letters to Westchester: one dated February 9, 1999 and the other dated September 13, 1999. The February 9 letter stated that the damages to the subject property as a result of the October 19, 1997 loss amounted to $116,140.00; a copy of the estimate was attached to the correspondence. In response, counsel for Westchester, Mr. C. Michael Johnson, stated in a March 4, 1999 letter that Westchester would be closing its file, as the only unresolved issue was the pending litigation to resolve allocation of the final payment by Westchester.[4] Mr. Dorsey's subsequent September 13, 1999 letter to Westchester referenced the February 9, 1999 correspondence in addition to the previously forwarded estimate for $116,140.00, and demanded the claim be adjusted properly or that a lawsuit would follow. Mr. Johnson responded for Westchester *179 on October 4, 1999 that the claim for damages resulting from the October 19, 1997 loss had already been paid by Westchester, and that moreover, multiple claims could not be made for the same loss.
Mr. Dorsey then filed suit against Westchester seeking payment for damages based on Mr. Perrilliat's January 1999 estimate. Appellants' policy, however, explicitly required that any supplemental claims be made within two years of knowledge of the date of the loss. Specifically, the Westchester policy provided that "no one may bring a legal action against us under this Coverage Part unless . . . 2. The action is brought within 2 years after you first have knowledge of the loss."[5] Mr. Dorsey did not file suit until after the two-year deadline had passed, on December 29, 1999.
That suit was removed by Westchester to the United States District Court for the Eastern District of Louisiana. Westchester filed a Motion for Summary Judgment, arguing not only that the cause of action had prescribed, but also that Mr. Boes had previously accepted payment and executed a release to Westchester for any and all damages caused by the fire. After Westchester filed its Motion for Summary Judgment, Mr. Boes terminated Mr. Dorsey's representation and hired Richard Weigand. Westchester's Motion for Summary Judgment was ultimately granted by the Eastern District on December 18, 2000. In its Order and Reasons, the Eastern District found that Westchester was not required to unconditionally render payment for the October 19, 1997 loss, and therefore, Westchester's conditional tender of $21,710.60 coupled with Mr. Boes' voluntarily signed Sworn Statement and Proof of Loss and acceptance of the check was a proper settlement for Mr. Boes' claim;[6] that the term "legal action" and other policy language regarding the two-year prescriptive period in which to file suit was not ambiguous;[7] and finally, that pursuant to the policy language, the correspondence Mr. Dorsey issued to Westchester did not constitute "legal action" sufficient to interrupt the two year prescriptive period, and that Mr. Boes' right to assert a supplemental claim had prescribed. The decision was thereafter affirmed by the U.S. Fifth Circuit Court of Appeals.[8]
PROCEDURAL HISTORY
Mr. Boes filed a malpractice suit against Appellees on February 2, 2001, and Mr. Weigand filed a Motion to Intervene on *180 April 23, 2002, requesting costs and attorney's fees. Mr. Boes and Mr. Weigand (hereafter collectively "Appellants") also filed a Partial Motion for Summary Judgment regarding the issue of liability.[9] The trial court granted Appellants' Motion for Summary Judgment, finding Mr. Dorsey liable for legal malpractice. The court further held that the amount of damages caused by the malpractice would be determined at trial. A trial was thereafter held on April 15, 2004 to determine the issue of damages.
The trial court ultimately held that the Appellants suffered no damages as a result of the alleged malpractice, because Appellants were unable to prove that the additional damages contained in Mr. Perrilliat's estimate were damages resulting from the October 19, 1997 fire. Thus, the trial court reasoned, Appellants would not have succeeded at trial in establishing that the supplemental damages claimed were caused by the October 19, 1997 loss. Accordingly, the trial court declined to award Appellants damages or attorney's fees. This appeal followed.
STANDARD OF REVIEW
A trial court's factual determinations are reviewed by an appellate court under the manifest error-clearly wrong standard. Stobart v. State, through Dept. of Transp. and Dev., 617 So.2d 880, 882 (La.1993). Additionally, when reviewing a trial court's decision regarding general damages, an appellate court must not assess what it determines to be an appropriate award in a particular case, but must review the trial court's judgment under the abuse of discretion standard. Andrus v. State Farm Mut. Auto. Ins. Co., 95-0801 (La.3/22/96), 670 So.2d 1206, 1210 (citing Reck v. Stevens, 373 So.2d 498 (La. 1979)). Thus, an appellate court must accord a great deal of deference to the trial court with respect to general damage awards. Id.
DISCUSSION

Assignment of Error # 1
In their first assignment of error, Appellants allege that the trial court legally erred in failing to award attorney's fees as an element of damages. We disagree. This assignment of error is addressed infra in our evaluation of the Appellants' fourth assignment of error.

Assignment of Error # 2
In their second assignment of error, Appellants allege that the trial court erred by not requiring Appellees to provide proof negating Appellants' claim. We disagree.
The trial court, in its Reasons for Judgment, stated that Mr. Boes "would not have been able to prove at trial that the fire caused the damages for which he sought payment." The trial court reached this conclusion after hearing extensive testimony and reviewing evidence from Mr. Perrilliat, Mr. Moulton, and Mr. Quick, all of whom personally inspected the subject property and prepared estimates of the damages; after hearing detailed testimony from Mr. Boes and from Mr. Weigand; and finally, after hearing testimony from Mr. Richard Fraser, who testified as an attorney and expert in insurance defense.
Mr. Moulton, who testified as an expert insurance adjustor, and Mr. Quick, who testified as an expert in civil engineering, both testified they did not observe any evidence of numerous items of damages that Mr. Boes later alleged had occurred *181 as a result of the fire, to-wit: damage to windows on the rear wall of the property;[10] destruction of a roof over the patio area of the property;[11] damage to steel shutters;[12] damage to stone lintels in some of the window openings;[13] and damage to painting and/or waterproofing on parts of the building.[14] Mr. Moulton further testified that had the surplus items on Mr. Perrilliat's original estimate been removed, that the remaining amount necessary for repairs on Mr. Perrilliat's estimate closely matched the estimates prepared by both Mr. Moulton and Mr. Wimprine. Put another way, had Mr. Perrilliat drafted his estimate based upon the same parts of the building that Mr. Moulton, Mr. Wimprine and Mr. Quick identified as being damaged as a result of the fire, the damage amounts on the estimates would have been nearly identical.
Additionally, both inspections of the damaged property by Mr. Quick and Mr. Moulton occurred within days of the loss; conversely, Mr. Perrilliat's inspection took place approximately one year and three months after the loss. Moreover, Mr. Perrilliat testified that because he had not visited the property prior to the loss, he relied strictly upon representations made by Mr. Boes regarding what specific items existed prior to the fire (including a roof) and what items had been damaged as a result of the fire.[15]
Finally, none of the correspondence sent by Mr. Dorsey to Westchester indicated that Mr. Boes was attempting to file a supplemental claim, or instructed Westchester to disregard the items on the estimate that had previously been settled and paid; instead, each of Mr. Dorsey's correspondences merely referenced the $116,140.00 amount, attaching the estimate drafted by Mr. Perrillat, and demanded payment. The estimate attached to Mr. Dorsey's correspondence included numerous items of damages that had, in fact, already been settled and paid in full by Westchester.[16] Not surprisingly, Westchester viewed Mr. Dorsey's demands as duplicate claims, or multiple claims for the *182 same loss, which Westchester plainly indicated in its correspondence through Mr. Johnson that it would not pay.[17] The October 4, 1999 letter from Mr. Johnson in response to Mr. Dorsey also posed a number of questions to Mr. Dorsey regarding his nonspecific demands, to which Mr. Dorsey did not respond; instead, Mr. Dorsey filed the lawsuit against Westchester on December 29, 1999.[18]
Thus, after reviewing all of the evidence and hearing all the testimony, the trial court determined that Mr. Boes would not have prevailed on his original claim with Westchester. We find that the record in this case does not show that the trial court failed to require Appellees to provide proof negating Appellants' claim; to the contrary, Appellees affirmatively proved at trial that Mr. Boes would not have succeeded on his original lawsuit against Westchester by putting forth a substantial amount of evidence to that effect. Accordingly, after hearing testimony and reviewing evidence from both parties, the trial court was persuaded by Appellees in this case, and we are not in a position to substitute our judgment for that of the factfinder. Therefore, we find that this assignment of error is without merit; indeed, whether the trial court required Appellees to negate Mr. Boes' claims or not, Appellees did, in fact, provide ample evidence to demonstrate that Appellants were not entitled to damages or attorney's fees in this case, despite the finding of malpractice.

Assignment of Error # 3
In their third assignment of error, Appellants allege that the trial court erred by disregarding Mr. Boes' testimony. We find nothing in the record that suggests the trial court disregarded Mr. Boes' testimony.[19] Therefore, we find that this assignment of error is without merit.

Assignment of Error # 4
Finally, in their fourth assignment of error, Appellants argue that trial court erred by requiring Appellants to try a case within a case. We disagree.
The trial court held a trial in this case to determine whether or not Appellants were owed damages as a result of Mr. Dorsey's malpractice; this necessary showing of damages for Appellants to recover did not amount to a requirement to try a "case within a case." Therefore, we find that this assignment of error is without merit.
Appellants' reliance upon Jenkins v. St. Paul Fire & Marine Ins. Co., 422 So.2d 1109 (La.1982) and Finkelstein v. Collier, 93-999, (La.App. 5 Cir. 4/14/94) 636 So.2d 1053, for this proposition is misplaced. *183 While the court in Jenkins stated that proof of failure to timely assert a claim constitutes prima facie evidence that an attorney's negligence has caused the client "some loss," Jenkins, 422 So.2d at 1110, this does not automatically translate to a loss for which a party could have recovered monetary damages.[20] Likewise, the fact that the Appellees presented evidence at trial sufficient to overcome Appellants' allegations of damages that were incurred as a result of Mr. Dorsey's malpractice does not indicate that the trial court required Appellants to try a "case within a case."
In this case, the trial court found that while Appellants successfully established that Marc Dorsey did, in fact, commit malpractice, that Appellants did not successfully demonstrate that any damages were incurred as a result of his malpractice. Additionally, the trial court did not find that any damages were incurred by Appellants for action that were required in order to mitigate or correct Mr. Dorsey's error. We find that the trial court was not manifestly erroneous in making these determinations. Therefore, we affirm the trial court's decision that Appellants proved no damages for which they could have successfully recovered.
It follows, then, that Appellants are also not entitled to attorney's fees and costs. Appellants' argument that Mr. Weigand was hired to do what Mr. Dorsey could not is without merit. No matter what course of action Mr. Weigand took, the time period in which to file suit for a supplemental claim had lapsed by the time Mr. Weigand had been retained by Mr. Boes; this fact remains unchanged. Accordingly, we are in agreement with the trial court's decision declining to award attorney's fees in this particular case.
CONCLUSION
The judgment of the trial court in favor of the Appellees on the issue of damages is hereby affirmed.
AFFIRMED.
NOTES
[1] The estimate was prepared in November 1997.
[2] Mr. Wimprine did not testify at trial.
[3] This amount was based on the damage estimate of $26,710.60 less the policy's $5,000.00 deductible.
[4] Mr. Boes was in the process of divorce proceedings at this time, and the initial check was apparently issued to his estranged wife in error.
[5] Emphasis added.
[6] The court referenced La.Rev.Stat. Ann. § 22:658 (West 2000) and La. R.S. 22:1220 for the proposition that with regard to a "reasonable disagreement" between an insured and an insurer, the failure of the insurer to pay within the delays provided by law subjects the insurer to liability for penalties for the claim as a whole, and the insurer is required to unconditionally tender payment for the undisputed part of the claim. The court found, however, that in this case, "there was not an express disagreement between the insured and the insurer" because Mr. Boes "did not object to either appraisal [procured by Westchester] and voluntarily signed a subrogation receipt, which reflected the amount contained in each appraisal." Therefore, because Westchester was not required to make an unconditional tender for Mr. Boes' damages, the court concluded that "Westchester's conditional tender for full and final settlement was a proper payment of [Mr. Boes'] claim."
[7] The court further noted that because the policy language was not ambiguous, that there was no confusion as to what actions were necessary to interrupt the two-year prescriptive period.
[8] The court noted that Mr. Boes "failed to present evidence that the claim was in dispute at the time of the settlement" and that "under the plain terms of the contract, [Mr. Boes'] claims prescribed."
[9] Mr. Dorsey filed an opposition to the motion for summary judgment and a cross-motion for summary judgment.
[10] Mr. Moulton testified at trial that he observed damage to a window in the front (the Gravier Street side) of the building, where the firemen gained access to the building, but that he did not recall seeing any damage any windows on the rear wall of the property.
[11] Mr. Quick testified in detail regarding his observations of the damaged property. Specifically, Mr. Quick testified that he made an exhaustive inspection of the entire property and all of the rubble for any evidence of a roof and found none, nor could he find evidence of a roof that had collapsed, and he thus conclusively determined that no roof had existed on the subject property prior to the loss. Moreover, Mr. Moulton testified that when confronted with the lack of evidence of a roof, that Mr. Boes verbally agreed at the time of his inspection that there was no roof prior to the fire. Likewise, Mr. Moulton testified that during his inspection, he did not see evidence in the debris to indicate that a roof existed.
[12] Mr. Mouton testified at trial that he observed four shutter frames that were located high on the building, but observed no evidence of steel shutters.
[13] Mr. Quick and Mr. Moulton both testified at trial that they observed no damage to the lintels that would have occurred as a result of the fire.
[14] Moulton testified at trial that if the building had, in fact, been either painted or waterproofed, that based on his observation of the condition of the masonry, it had not been done for decades.
[15] We also note that Mr. Perrillat did not testify either as an engineer or an expert in insurance adjustment.
[16] Mr. Perrilliat ultimately wrote two estimates for Mr. Boes; the second estimate, dated November 19, 2002, was rewritten to include the increase in the cost of labor and materials over the passage of time.
[17] In the October 4, 1999 letter to Mr. Dorsey, Mr. Johnson stated, "I am sure you understand that multiple claims cannot be made on the same loss that has been resolved and paid."
[18] Mr. Johnson requested that "if you persist on making multiple demands for payment for the same loss already paid that you provide the following information to Westchester Fire Insurance Company. . . ." A list of ten questions followed, requesting additional information, such as: on what grounds Mr. Dorsey was specifically basing his contention that Westchester should pay twice for the same loss; whether the insureds who were on the policy were in dispute; whether Mr. Boes has an additional right independent of the claims previously submitted for the loss that had been paid by Westchester; whether Westchester had been previously instructed to not make a payment to the insureds; or whether Mr. Dorsey was asserting that the previous claim submitted on the loss was a false or fraudulent claim.
[19] We note that Mr. Boes testified at length on two separate occasions during the trial; the second examination was conducted by counsel for Appellants in order to elicit further testimony from Mr. Boes regarding the property's common wall and was conducted over Appellees' objections.
[20] While we agree with the Jenkins court's observation that "it is unlikely [that an] attorney would have agreed to handle a claim completely devoid of merit," Jenkins, 422 So.2d at 1110, we note the fact that simply because an attorney takes on a particular case does not guarantee that the claim has merit, nor does it guarantee that the outcome of the litigation on the claim will result in a monetary judgment, or even a judgment favorable to the client.