# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 17-918

**SHAWN M. CUPIT, INDIVIDUALLY AND O/B/O JAMES D. CUPIT (DECEASED)**

**VERSUS**

**TWIN CITY FIRE INSURANCE CO., ET AL.**

**\*\*\*\*\*\*\*\*\*\***

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 2015-3680, DIVISION "B"
HONORABLE CLAYTON DAVIS, DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\***

**ULYSSES GENE THIBODEAUX
CHIEF JUDGE**

**\*\*\*\*\*\*\*\*\*\***

Court composed of Ulysses Gene Thibodeaux, Chief Judge, John D. Saunders, and Elizabeth A. Pickett, Judges.

**AFFIRMED.**

**James Huey Gibson
Charles Martin Kreamer, Sr.
Allen & Gooch
P. O. Drawer 81129
Lafayette, LA 70598-1129
Telephone: (337) 291-1300
COUNSEL FOR:**
    **Defendants/Appellees - Roger G. Burgess and Baggett, McCall, Burgess,Watson & Gaughan, LLC**

W. Evan Plauche'
Michael Leon Cohen
Hailey, McNamara, Hall, Larmann & Papale, L.L.P.
One Galleria Boulevard – Suite 1400
Metairie, LA 70011-8288
Telephone:  (504) 836-6500
COUNSEL FOR:
    Defendant/Appellee - Joseph B. Moffett

Seth Andrew Schmeeckle
Shaundra Schudmak
Lugenbuhl, Wheaton, Peck, Rankin & Hubbard
Pan-American Life Center
601 Poydras Street, Suite 2775
New Orleans, LA 70130
Telephone:  (504) 568-1990
COUNSEL FOR:
    Defendant/Appellee – Twin City Fire Insurance Company

Scott Webre
Webre & Associates
2901 Johnston Street - Suite 307
Lafayette, LA 70503
Telephone:  (337) 237-5051
COUNSEL FOR:
    Plaintiff/Appellant - Shawn M. Cupit, Individually and o/b/o James
    Cupit (Deceased)

Michael G. Johnston, II
2901 Johnston Street – Suite 307
Lafayette, LA 70503
Telephone:  (337) 237-5051
COUNSEL FOR:
    Plaintiff/Appellant - Shawn M. Cupit, Individually and o/b/o James
    Cupit (Deceased)

Jacques F. Bezou, Jr.
The Bezou Law Firm
534 E. Boston Street
Covington, LA 70433
Telephone:  (985) 892-2111
COUNSEL FOR:
    Plaintiff/Appellant - Shawn M. Cupit, Individually and o/b/o James
    Cupit (Deceased)

**THIBODEAUX, Chief Judge.**

In this legal malpractice case, the plaintiff, Shawn M. Cupit, appeals the trial court's granting of summary judgment in favor of the defendants, Roger G. Burgess and Baggett, McCall, Burgess, Watson & Gaughan, LLC (Baggett McCall), Joseph B. Moffett, and his insurer, Twin City Fire Insurance Company. After a de novo review, finding no genuine issue of material fact and no error in the trial court's judgment, we affirm the judgment in all respects.

## I.

## ISSUES

We must decide whether the trial court erred in granting the defendants' motion for summary judgment.

## II.

## FACTS AND PROCEDURAL HISTORY

Shawn Cupit retained Joseph Moffett of Mississippi to represent him and his father[1] in wrongful death and survival actions following the death of Shawn's mother, Martha Cupit. Ms. Cupit was a 50-year-old patient at Professional Rehabilitation Hospital, LLC (PRH) in Concordia Parish for wound care of a burned foot that had become gangrenous. She suffered from many physical health problems and was on medication for schizophrenia. During the night, Ms. Cupit climbed out of a window in the rehab facility and was struck and killed by a drunk driver operating a vehicle on the highway.

---

[1]The claims of Mr. James Cupit were subsequently dismissed from the suit.

Mr. Moffett associated Roger Burgess and Baggett McCall as local counsel for the Louisiana claims. Suit was filed against the driver who struck and killed Ms. Cupit, his insurer, and PRH. The claim against PRH was based upon a negligent failure to observe the patient and to provide a safe environment. PRH was dismissed without prejudice to allow completion of a Medical Review Panel.

Mr. Burgess submitted a request for a Medical Review Panel pursuant to the Medical Malpractice Act. The Medical Review Panel rendered a decision on December 17, 2009, finding that the evidence did "not support the conclusion that the defendant, Professional Rehabilitation Hospital, failed to comply with the appropriate standard of care as charged in the complaint." The Panel's written reasons provided:

> It is common practice to admit patients to a medical facility who have known psychiatric problems and who are on psychiatric medications, unless there are specific indicators to the contrary, which we did not find in this case. The records, including the notes of the nurses, therapists, and physicians, did not indicate any reasons for psychiatric hospitalization of this patient. The patient was on psychiatric medications, including Cogentin, however the dosage of Cogentin was only .25mg daily. Additionally, this drug has a very short half-life, which would not require any increased monitoring of the patient. The records further indicate that the patient was being adequately observed, and due to her history, there was not sufficient reason to fit her with an Ambu alarm.

The Medical Review Panel members were Dr. Gerald Mouton, a family medicine practitioner; Dr. Gerry Hebert, an internal medicine practitioner; and Dr. Kashinath Yadalam, a psychiatric medicine practitioner.

Burgess and Baggett McCall next obtained the expert opinion of Dr. Richard W. Williams, a forensic specialist in psychiatric and addiction medicine in Shreveport, Louisiana. Dr. Williams authored an opinion letter after studying all

of the claims, reports, and medical records from three separate hospitals, one of which was in Mississippi. He concluded that there was no medical malpractice on the part of PRH.

Dr. Williams's letter stated that he had reviewed Mr. Cupit's petitions for damages, as well as Mr. Burgess's letter stating those claims; that he had reviewed the entire medical records of PRH, including history and physical, progress notes, consults and nursing notes, medical records of two previous hospitals, and the crash reports. Dr. Williams's letter of September 10, 2010, then stated as follows:

> It is clear from the record that Ms. Martha Cupit was suffering from peripheral vascular disease with gangrene to her right foot, and had been admitted to Natchez Regional Medical Center for stabilization and then long-term stabilization care at [PRH], attempting to minimalize any amputation that was needed. She was not admitted for any psychiatric illness, and it was well-documented that she had a long history of Schizophrenia.
>
> It is clear throughout the record that Ms. Cupit was not floridly psychotic, and she was maintained on all of the antipsychotic medications, antidepressants, and other medications which were prescribed prior to her admission to [PRH]. It is clear in the record that, when Ms. Cupit's husband indicated his opinion that she had some increase in psychotic thinking, it was reported to her physician and this immediately resulted in a consult for psychiatric opinion and care. In addition, Ms. Cupit had seen a psychiatric nurse practitioner in the past, and this also was ordered and carried out. The medications that Ms. Cupit were prescribed were appropriate for her condition. Specifically, the dose of Cogentin was a very small dose, and a fraction of the typical amount of Cogentin prescribed for the EPS symptoms secondary to antipsychotic medication. There was no evidence that she was a danger to herself or others, and there was no evidence that she was an elopement risk.
>
> In summary, it is my opinion that the care offered by [PRH] was appropriate and seemed to be adequate in nature, and there seems to be no deviation of the standard

3

of care in any regard. The care at [PRH] did not lead to the death of Ms. Cupit. It is very unfortunate that this tragic accident did occur, however, this seems to be totally a reflection of the negligent driving on the part of the plaintiff, Eric L. Guillot, who received a DWI at the time.

The written opinion of Dr. Williams was facilitated through medical malpractice attorneys, John Hammons and Cornell Flournoy, whose investigation led them to suggest dismissal based upon insufficient evidence to support a claim for medical malpractice. Ultimately, the suit was dismissed for abandonment.

Shawn Cupit filed a legal malpractice suit against the defendants. Burgess and Baggett McCall filed a motion for summary judgment, which was subsequently joined by Joseph Moffett and his insurer, Twin City Fire Insurance. The basis of the summary judgment motion was that Mr. Cupit could not prove that he would have succeeded in the underlying medical malpractice claim. Attached to the motion for summary judgment was Mr. Cupit's legal malpractice petition, his discovery responses indicating that he had retained no medical expert to establish the standard of care in the underlying medical negligence case, the Medical Review Panel Opinion, the opinion of Dr. Williams, the affidavit of counsel authenticating Dr. Williams's opinion, and the 2016 obituary of Dr. Williams.

Mr. Cupit filed an opposition to the motion for summary judgment, asserting that the medical negligence was so obvious that no expert testimony was required. Notwithstanding, Mr. Cupit attached the affidavit of a nurse-practitioner, Ms. Sonya Pittman, purporting to establish genuine issues of material fact regarding a breach of the standard of care by PRH for its failure to install a bed/chair alarm in Ms. Cupit's room.

4

Baggett McCall filed a reply memorandum objecting to Ms. Pittman's affidavit, as did Twin City Fire Insurance. The day before the hearing, Mr. Cupit sought to supplement his opposition and filed a second affidavit by Ms. Pittman. At the hearing, the trial court rejected Mr. Cupit's supplemental filing and second affidavit as untimely and heard substantial arguments by the parties on the original affidavit and its effect on the motion for summary judgment. The trial court found that the Pittman affidavit was deficient because it did not address causation and because Ms. Pittman was not qualified to render an expert opinion on the issues in the case. Thereafter, the trial court granted the defendants' motion for summary judgment. Mr. Cupit filed this appeal.

## III.

## STANDARD OF REVIEW

The grant or denial of a motion for summary judgment is reviewed de novo, "using the same criteria that govern the trial court's determination of whether summary judgment is appropriate; i.e. whether there is any genuine issue of material fact, and whether the movant is entitled to judgment as a matter of law." *Samaha v. Rau*, 07-1726, pp. 3-4 (La. 2/26/08), 977 So.2d 880, 882-83 (citations omitted); La.Code Civ.P. art. 966.

## IV.

## LAW AND DISCUSSION

Shawn Cupit contends that the trial court erred in granting summary judgment to the defendant attorneys because the court (1) relied on unverified, unsworn documents; (2) excluded expert testimony as unqualified without a contradictory hearing; (3) found that the nurse-practitioner's affidavit did not

create a genuine issue of material fact; (4) required the plaintiff to provide expert medical testimony; and (5) failed to shift the burden pursuant to *Jenkins v. St. Paul Fire & Marine Ins. Co.*, 422 So.2d 1109 (La.1982).

### *Summary Judgment Procedure*

"The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action, except those disallowed by Article 969. The procedure is favored and shall be construed to accomplish these ends." La.Code Civ.P. art. 966(A)(2). "After an opportunity for adequate discovery, a motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law." La.Code Civ.P. art. 966(A)(3). "The only documents that may be filed in support of or in opposition to the motion are pleadings, memoranda, affidavits, depositions, answers to interrogatories, certified medical records, written stipulations, and admissions." La.Code Civ.P. art. 966(A)(4). "A motion for summary judgment and all documents in support of the motion shall be filed and served on all parties in accordance with Article 1313 not less than sixty-five days prior to the trial." La.Code Civ.P. art. 966(B)(1). "Any opposition to the motion and all documents in support of the opposition shall be filed and served in accordance with Article 1313 not less than fifteen days prior to the hearing on the motion." La.Code Civ.P. art. 966(B)(2). "In all cases, the court shall state on the record or in writing the reasons for granting or denying the motion. If an appealable judgment is rendered, a party may request written reasons for judgment as provided in Article 1917." La.Code Civ.P. art. 966(C)(4).

6

"The burden of proof rests with the mover." La.Code Civ.P. art. 966(D)(1). However, if the mover will not bear the burden of proof at trial, the mover is not required to negate all elements of the adverse party's claim, action, or defense; he is only required to show the absence of factual support for one essential element of the adverse party's claim. *Id.* The burden then shifts to the adverse party to produce facts sufficient to establish a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law." *Id.*

### *Unsworn Medical Opinion Letter*

Mr. Cupit's opposition to the defendants' motion for summary judgment asserted that Dr. Williams's opinion letter regarding the medical malpractice claim did not meet the requirements of La.Code Civ.P. art. 966(A)(4) because it was an unsworn or unverified document and that it was hearsay.

As stated by Mr. Cupit in his opposition, La.Code Civ.P. art. 966(A)(4) states: "The only documents that may be filed in support of or in opposition to the motion are pleadings, memoranda, affidavits, depositions, answers to interrogatories, certified medical records, written stipulations, and admissions." Mr. Cupit's opposition then quoted language from a first circuit case as follows:

> Louisiana Code of Civil Procedure articles 966 and 967 do not permit a party to utilize unsworn and unverified documents as summary judgment evidence. Thus, a *document that is not an affidavit* or sworn to in any way, or is not certified *or attached to an affidavit*, has no evidentiary value on a motion for summary judgment. Therefore, in meeting the burden of proof, unsworn or unverified documents, such as letters or reports, annexed to motions for summary judgment are not self-proving and will not be considered; attaching such documents to a motion for summary judgment does

not transform such documents into competent summary judgment evidence.

*Bunge North America, Inc. v. Bd. of Com. & Ind. and La. Dept. of Eco. Dev.*, 07-1746, p. 24 (La.App. 1 Cir. 5/2/08), 991 So.2d 511, 527, *writ denied*, 08-1594 (La. 11/21/08), 996 So.2d 1106.

In *Bunge*, the documents referred to by the court were discovery responses of the opponent's internal documents attached to the motion for summary judgment with no affidavit or verification of any kind.

Conversely, here, the expert opinion letter of Dr. Williams was attached to the affidavit of attorney Roger Burgess. In his affidavit, Mr. Burgess stated that the statements in the affidavit were within his personal knowledge and were true and correct. Mr. Burgess's affidavit then verified that the opinion of Dr. Williams was obtained by him through attorneys John Hammons and Cornell Flournoy. He further attested that Dr. Williams's opinion letter was forwarded to him by Mr. Hammons and that the transmittal letter of Mr. Hammons, dated October 5, 2010, and the expert opinion letter of Dr. Williams, dated September 10, 2010, were true and correct copies from Mr. Burgess's client file maintained in his office for Mr. Cupit. Mr. Burgess further attested to the fact that Dr. Richard W. Williams had passed away in 2016. Accordingly, Dr. Williams's expert opinion letter was not unverified and unsworn in violation of La.Code Civ.P. art. 966(A)(4) as asserted by Mr. Cupit.

Likewise, Mr. Cupit's argument that the opinion letter is hearsay also fails where the opinion letter falls under the hearsay exception of La.Code Evid. art. 804(B)(6). More specifically, Dr. Williams was unavailable, having passed away the year before the motion for summary judgment was filed. Dr. Williams's expert

opinion was trustworthy where it had been rendered in 2010, five years before the legal malpractice claim was filed in 2015. Further, Mr. Burgess attached the transmittal letter of the firm specializing in medical malpractice through which he obtained Dr. Williams's opinion. Thus, the defendants investigated numerous additional avenues, all of which resulted in essentially the same conclusion as that reported in the Medical Review Panel Opinion, i.e., no evidence of medical malpractice. Finally, the defendants provided the court and Mr. Cupit notice that it intended to use the opinion letter of Dr. Williams by attaching it, along with the transmittal letter and the affidavit to the motion for summary judgment on May 8, 2017, over two months before the hearing on July 20, 2017. Accordingly, this assignment of error has no merit.

### *Contradictory Hearing & Qualifications of Nurse Practitioner*

Mr. Cupit contends that the trial court erred in failing to hold a contradictory hearing on the affidavit of the nurse practitioner, Sonya Pittman, and in finding that she was not qualified to render opinions in this case. We disagree. Mr. Cupit filed two affidavits signed by Ms. Pittman, a June 30, 2017 affidavit which was attached to Mr. Cupit's opposition to the defendants' motion for summary judgment, and a July 18, 2017 affidavit attached to Mr. Cupit's supplemental opposition. The second affidavit was filed the day before the hearing and was properly excluded as untimely. La.Code Civ.P. art. 966(B)(1)-(2).[2] As to

---

[2](2) Any opposition to the motion and all documents in support of the opposition shall be filed and served . . . not less than fifteen days prior to the hearing on the motion.

(3) Any reply memorandum shall be filed and served . . . not less than five days prior to the hearing on the motion. No additional documents may be filed with the reply memorandum.

La.Code Civ.P. art. 966(B).

9

the failure to hold a separate contradictory hearing on the qualifications of Ms. Pittman to render an expert opinion in this case, the record reveals that Mr. Cupit did not raise the issue in the trial court; thus, we are precluded from considering it on appeal. *See Boudreaux v. State, Dep't of Transp. & Dev.*, 01-1329 (La. 2/26/02), 815 So.2d 7.

Moreover, the opinion cited by Mr. Cupit, *Adolph v. Lighthouse Property Insurance Corp.*, 16-1275 (La.App. 1 Cir. 9/8/17), 227 So.3d 316, is not authoritative herein. Summary judgment procedure, which has the purpose of just and speedy determinations of actions, does not require a *Daubert* hearing pursuant to La.Code Civ.P. art. 1425, for trial purposes, to determine the admissibility of an expert's opinion contained in an affidavit filed in connection with a motion for summary judgment. This was articulated in Judge Crain's concurrence in *Adolph*. Under La.Code Civ.P. art. 966(D)(2):

> The court may consider only those documents filed in support of or in opposition to the motion for summary judgment and shall consider any documents to which no objection is made. Any objection to a document shall be raised in a timely filed opposition or reply memorandum. The court shall consider all objections prior to rendering judgment. The court shall specifically state on the record or in writing which documents, if any, it held to be inadmissible or declined to consider.

Here, Baggett McCall filed a timely reply memorandum on July 13, 2017, objecting to Ms. Pittman's first affidavit based upon the content of the affidavit and her lack of qualifications to render an expert opinion on the underlying medical malpractice case. Contrary to Mr. Cupit's assertion, the trial court considered Ms. Pittman's first affidavit but ultimately found her qualifications insufficient on a substantive basis.

Pursuant to La.Code Evid. art. 702:

10

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

(1) The expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(2) The testimony is based on sufficient facts or data;

(3) The testimony is the product of reliable principles and methods; and

(4) The expert has reliably applied the principles and methods to the facts of the case.

Here, the record reveals that Ms. Pittman specialized in gerontology and psychiatric mental health. She worked at an outpatient facility, the Homeless Primary Care Clinic, a part of the Southeast Louisiana Veteran's Health Care System in New Orleans. Ms. Pittman's affidavit did not indicate that she had any training, education, or experience in a long-term, acute-care rehabilitation facility such as PRH. Nor did it indicate that she had familiarity with, or had used, bed/chair alarms in her practice, or that she even knew what type of bed/chair alarms were used by PRH in 2007. Further, Ms. Pittman's affidavit stated that she did not review the internal policies and procedures in place at PRH. The trial court did not err in finding that Ms. Pittman does not qualify as an expert on causation in this case under La.Code Evid. art. 702. For all of the foregoing reasons, this assignment of error has no merit.

### *The Affidavit & Issues of Fact Regarding Causation*

Mr. Cupit contends that the trial court erred in failing to find that the affidavit of Ms. Pittman created genuine issues of material fact. Again, we must disagree. In a medical malpractice case against a hospital, the plaintiff must prove

11

that the hospital had a duty to protect the patient against the risk involved. *Smith v. State, through Dep't of Health & Human Res. Admin.*, 523 So.2d 815 (La.1988). Ms. Pittman's opinion was that Ms. Cupit was at a high risk for *falls*, and the standard of care required PRH to use a bed/chair alarm to prevent Ms. Cupit from *falling*. However, Ms. Cupit did not fall and injure herself. She climbed out of a window and was struck by a vehicle on the highway. The Medical Review Panel opined that no psychiatric hospitalization, increased monitoring, or alarm was indicated. In fact, the medical records of Ms. Cupit indicated that she was alert and cooperative. Moreover, Ms. Pittman's affidavit did not address causation.

Where the affidavit failed to supply sufficient facts to support the conclusions therein, it was speculative. "Mere speculation will not defeat a motion for summary judgment, and conclusory allegations, improbable inferences, and unsupported speculation are insufficient to support a finding that a genuine issue of material fact exists." *Kinch v. Our Lady of Lourdes Reg'l Med. Ctr.*, 15-603, pp. 7-8 (La.App. 3 Cir. 12/9/15), 181 So.3d 900, 906. Additionally, Ms. Pittman's affidavit failed to affirmatively show that Ms. Pittman was competent to testify to the matters stated, as required by La.Code Civ.P. art. 967(A). Therefore, the trial court did not err in finding that the affidavit was insufficient to defeat summary judgment. This assignment of error has no merit.

### *Requirement for Expert Testimony*

Mr. Cupit contends that the trial court erred in requiring expert testimony in the underlying medical malpractice case because the negligence was obvious. We disagree.

> To establish a claim for medical malpractice, a plaintiff must prove, by a preponderance of the evidence:

> (1) the standard of care applicable to the defendant; (2) that the defendant breached that standard of care; and (3) that there was a causal connection between the breach and the resulting injury. La. R.S. 9:2794. Expert testimony is generally required to establish the applicable standard of care and whether or not that standard was breached, except where the negligence is so obvious that a lay person can infer negligence without the guidance of expert testimony. *Pfiffner v. Correa*, 1994-0924, 1994-0963, 1994-0992 (La.10/17/94), 643 So.2d 1228.

*Samaha v. Rau*, 977 So.2d at 883-84.

The *Pfiffner* court provided examples of situations in which expert testimony is not necessary.

> Expert testimony is not required where the physician does an obviously careless act, such as fracturing a leg during examination, amputating the wrong arm, dropping a knife, scalpel, or acid on a patient, or leaving a sponge in a patient's body, from which a lay person can infer negligence. *See Hastings v. Baton Rouge Gen. Hosp.*, 498 So.2d 713, 719 (La.1986).

*Pfiffner*, 643 So.2d at 1233-34.

This is not such a case. The *Pfiffner* court further noted that there are "cases in which there are obvious unnecessary delays in treatment which constitute medical malpractice and where causation is evident." *Id*. at 1234. This is not such a case. Such a case did occur in *Browning v. West Calcasieu Cameron Hospital*, 03-332 (La.App. 3 Cir. 11/12/03), 865 So.2d 795, *writ denied*, 03-3354 (La. 12/13/04), 867 So.2d 691, which was cited by Mr. Cupit at the hearing on the motion for summary judgment.

In *Browning*, emergency medical technicians (EMTs) were called to examine Mrs. Browning, who, over several hours had experienced pain in her left arm, difficulty breathing, dizziness, and vomiting. After obtaining her medical history, the EMTs suggested that she probably suffered a heat-related injury and

13

asked permission to transport her to the hospital. Mrs. Browning refused transport. Shortly thereafter, Mrs. Browning began shaking and gasping for breath. The EMTs were called back, and she was transported to St. Patrick Hospital, where she died within six hours from a heart attack. There were conflicts in the testimony of the family and the EMTs regarding whether protocols were followed in getting Mrs. Browning's signed refusal for transport on the first run. And, there was a disputed assertion by Mr. Browning that one of the EMTs admitted that they had "messed up" by not transporting Mrs. Browning to the hospital on the first run. *Id*. at 807. Thus, the EMTs' motion for summary judgment was denied.

On the defendants' application for a supervisory writ, we found that the Brownings had "produced solid evidence to support their claim that [the EMTs] did not follow the hospital's protocols for obtaining and documenting a patient's written refusal on the first ambulance run," even without expert testimony. *Id.* at 802. However, the protocols and the refusal form were specific and *applicable* to the exact situation for transport and refusal that occurred in *Browning.* Conversely here, Ms. Pittman's affidavit discusses protocols for a risk of *falling* that was not applicable in this case. As to causation in *Browning*, that was evident as well, where one EMT admitted that "in hindsight," he thought Mrs. Browning could have been having a heart attack when they were there the first time, and both EMTs recognized that if they had taken Mrs. Browning to the hospital on the first run, she would have been placed on a cardiac monitor that could have detected a heart condition immediately. *Id*. at 806.

Conversely, here, this is not such a case wherein there is an obvious delay showing negligence and causation. This assignment of error has no merit.

### *Burden of Proof*

> To establish a claim for legal malpractice, a plaintiff must prove: 1) the existence of an attorney-client relationship; 2) negligent representation by the attorney; and 3) loss caused by that negligence. A plaintiff can have no greater rights against attorneys for the negligent handling of a claim than are available in the underlying claim.

*Costello v. Hardy*, 03-1146, pp. 9-10 (La. 1/21/04), 864 So.2d 129, 138 (citations omitted).

We do not make a finding on the second element above, because the defendants have successfully proved that Mr. Cupit did not sustain a loss, under the third element above, by any negligence of the attorneys to prevent abandonment. That is, the defendants have shown that, under the third element, Mr. Cupit would not have succeeded in the underlying medical malpractice action where he presented no competent expert testimony to prove that PRH caused Ms. Cupit's death by a drunk driver on the highway.

Mr. Cupit argues, again for the first time on appeal, that the trial court erred in not shifting the burden of proof in the legal malpractice case under *Jenkins v. St. Paul Fire & Marine Ins. Co.*, 422 So.2d 1109 (La.1982). In *Jenkins*, the supreme court modified the former evidentiary burden of proof in legal malpractice cases which had required the plaintiff to not only prove his former attorney's negligence but also to prove that the underlying claim would have been successful but for the attorney's negligence. *Id*. The limited modification in *Jenkins* shifted the burden of proof regarding the success or failure of the underlying claim to the defendant attorney. *Id*.

Here, the defendants correctly point out that they proved the shifted burden in any event. We agree. This assignment of error also has no merit.

15

V.

## **<u>CONCLUSION</u>**

Based upon the foregoing, the judgment of the trial court, granting summary judgment to the defendants, Roger G. Burgess, Baggett, McCall, Burgess, Watson & Gaughan, LLC, Joseph B. Moffett, and Twin City Fire Insurance Company, is affirmed. Costs of this appeal are assessed to the plaintiff, Shawn M. Cupit.

**AFFIRMED.**