538 So.2d 1029 (1989)
QUARLES DRILLING CORPORATION
v.
GENERAL ACCIDENT INSURANCE CO., et al.
No. CA-8625.
Court of Appeal of Louisiana, Fourth Circuit.
January 30, 1989.
Writ Denied April 7, 1989.
Victoria Lennox Bartels, William F. Wessel, Wessel, Bartels & Ciaccio, New Orleans, for plaintiff-appellant.
W.K. Christovich, Christovich & Kearney, New Orleans, for defendants-appellees.
Before SCHOTT, C.J., and ARMSTRONG and BECKER, JJ.
SCHOTT, Chief Judge.
This is a legal malpractice suit. In August, 1982 plaintiff's personnel consulted Bruce Oreck, a tax specialist and member of the law firm of Liskow & Lewis, defendant's insured, relative to a use tax assessment levied against a drilling rig owned by plaintiff. Plaintiff paid the tax and alleges that the payment was in error and was caused by Oreck's negligence in failing to advise that the rig was exempt from the tax and that the payment should be made under protest. From a judgment dismissing the suit, plaintiff has appealed.
On June 28, 1982, E.H. Flynn, the St. Charles Parish School Board tax collector, notified plaintiff through its local manager, Scott Spears, that use tax in the amount of $235,844.66, was due on plaintiff's Barge Rig # 20 which had operated in the parish. Spears consulted with plaintiff's tax manager, Joe Martin, who applied for an extension of time to respond to the assessment. Flynn granted an initial extension until August 14, 1982 and a second extension until August 20. On August 9 Spears contacted Oreck and sent him a copy of the assessment and some background information on Rig 20. On August 16 Oreck had a telephone conversation with Martin and scheduled a meeting with him for August 18.
In a file memorandum of the August 16 telephone conversation Oreck noted that plaintiff had presented two problems. The first was whether Plaquemines Parish where the rig was constructed in 1978 could claim sales tax on the purchases of components installed in the rig thereby duplicating the claimed use tax; and the second was that the use tax assessment was excessive and included substantial penalties.
In attendance at the meeting at Oreck's office on August 18 were Spears, Martin, and plaintiff's comptroller, Craig Strawmeyer. According to Oreck, they questioned only whether the School Board had the authority to assess the tax against their rig and the amount of the assessment. *1030 Oreck advised them that the ordinance gave them authority to assess the tax and he recommended that they meet with Flynn and attempt to make an amicable settlement of the assessment with a waiver of penalties. The three met with Flynn on August 19 and settled the assessment for $130,476. Plaintiff paid this amount.
During the ensuing weeks Flynn informed Martin that the Board would assess use tax against a second rig owned by plaintiff, Rig 18. After conferring with his superiors, Martin contacted a New Iberia attorney, Ray F. Mestayer, to determine whether the Board could lawfully collect use taxes on the rigs. In a December 3, 1982 letter Mestayer told Martin that the two rigs could not be lawfully assessed for use taxes for two reasons: first, because both of the rigs were purchased before the effective date of the 1978 ordinance which authorized the tax; and second, because the ordinance exempted vessels and their parts. Martin wrote Flynn on December 20 objecting to the tax on Rig 18 and requesting a refund of the tax on Rig 20.
Flynn rejected Martin's position stating that a 1965 ordinance contained the same provisions as the 1978 ordinance and that LSA-R.S. 47:305.1(C) (prior to its repeal by Act 56 of 1982) excluded drilling equipment from the exemption provided to vessels.
At this point Martin consulted with and retained Richard Wolfe, a tax specialist with the law firm of Monroe & Lemann, for the purpose of proceeding against the board for recovery of the use tax paid on Rig 20. They prepared a formal protest of the board's assessment on Rig 20 which plaintiff filed in February, 1983. In the protest plaintiff argued that Rig 20 was exempt from use tax because plaintiff acquired the rig in a "casual" sale. When the board rejected the protest plaintiff considered a suit for a refund of the tax but Monroe & Lemann advised that a major obstacle to a successful suit was plaintiff's failure to pay the tax under protest and that the slim chance of recovery was outweighed by the expense which would be incurred in such litigation. In the present suit plaintiff charges Oreck with negligence in failing to recognize that the "casual sale" exemption applied to it's rig and failing to advise plaintiff to contest the assessment by paying under protest and bringing a timely suit for a refund.
Oreck testified that the three plaintiff's executives sought limited advice which did not include the question of whether plaintiff owed the tax legally or whether there might be an exemption applicable to the rig. He takes the position that these were sophisticated individuals (particularly Martin who was a certified public accountant and former senior partner in Arthur Anderson's taxation department in Tulsa) who sought specific limited advice and who were not looking for a comprehensive analysis of the problem. On the other hand, the three executives testified that they employed Oreck to determine whether or not they owed the tax and they expected him to advise them of an exemption if one was applicable.
The case was tried to a commissioner whose findings were adopted by the trial judge. These findings included the following: 1) The scope of the representation and advice sought from Oreck did not include an attack on the tax itself, the applicability of exemptions, or recovery of the tax after it was paid. 2) Plaintiff's evidence of subsequent legal opinions and of the history of the rig did not establish that Oreck's advice was negligently given or that his advice was either inappropriate or ineffective.
In this court, plaintiff argues that Oreck gave bad advice which caused plaintiff to pay tax not legally collectible and to forfeit any chance of recovering the tax. Both parties have devoted much attention to the issue of whether the scope of Oreck's representation included a duty to consider the casual sale exemption and to advise the clients to resist the tax on this basis. The answer partially depends on a resolution of the conflict in testimony between Oreck and the three plaintiff's executives which was within the province of the trial court. On the other hand, we have considerable difficulty accepting Oreck's position that the three were asking only whether the School Board had the authority to collect *1031 the tax as distinguished from asking whether they owed the tax. Oreck is a certified tax attorney specialist with impressive training, background and credentials. It seems inconceivable that such an expert would not even consider and discuss with these clients whether they owed the tax at all when the whole purpose of their visit was to find out from Oreck what to do about this $235,000 tax bill.
In order to determine whether Oreck's conduct constituted actionable malpractice under the circumstances we must determine whether he would have given the same advice even if he had considered the exemption possibility and whether he could have given the advice without committing malpractice even if the advice was wrong in retrospect.
The first question is whether the casual sale exemption necessarily applied to the rig. In order to address this question the history of the rig is significant. In August, 1978 Circle Bar Drilling Corporation purchased a bare barge from Loffland Brothers of Canada and brought the barge to Plaquemines Parish where it spent five million dollars converting it to a drilling rig. The record is not clear but seems to establish that little sales tax if any was paid on the machinery, equipment, and fixtures installed in the rig. In 1981, Circle transferred the rig to Integrated Drilling and Exploration, Inc. for stock in the company. Next Integrated transferred the rig to its wholly owned subsidiary, Quarles Drilling Corporation, plaintiff, as a contribution to its capital stock. For tax purposes these are three separate, independent corporate entities.
Counsel on both sides have devoted over fifty percent of their voluminous briefs to the question of whether Rig 20 was properly assessed for use tax. Plaintiff argues persuasively that 1) the law respecting state sales and use tax applies to parish taxes; 2) under state law any exemption from sales tax applies to use tax as well; 3) if Integrated and Quarles, parent and subsidiary respectively, are considered the same entity for tax purposes, the transaction between Circle and Integrated was an "isolated or occasional sale.... by a person not engaged in such business" which was exempt from sales tax by R.S. 47:301(10); and 4) if Quarles is considered a separate entity for sales tax purposes, the transaction between Integrated and Quarles was either not a sale at all, in which instance no sales tax was due, and, therefore, no use tax either; or, if a sale, it was an isolated or occasional sale exempt from sales tax by R.S. 47:301(10), and likewise exempt from use tax.
Defendant argues with equal persuasiveness that every exemption from sales tax does not necessarily apply to use tax, that the casual sale exemption from sales tax does not apply to use tax, and that this position is supported by the wording of the exemption statutes and by Sales Tax Collector v. Delta Serv. Industries, 453 So.2d 569 (La.App. 5th Cir.1984) in which the court held that the exemption granted to a barge from sales tax by R.S. 47:305.1 was not applicable to use tax. Defendant further contends that even if the sales tax exemption were applicable to use tax, the exemption still does not apply in this instance because the transaction in which plaintiff acquired the rig was not a sale at all. Countering plaintiff's argument that no sale between Integrated and Quarles would result in no use tax due by Quarles, defendant points to R.S. 47:302(A)(2) which specifically imposes the use tax when the thing is not sold but is used in the state. Defendant also argues that the same section made Rig 20 liable for use tax because plaintiff paid no sales tax on any of the almost five million dollars of components it installed on the barge in Plaquemines Parish.
Plaintiff apparently recognizes that the Delta Serv. Industries case is contrary to its position, but it argues that the court's reasoning in the case was wrong. Whether this is so or not, and whether the result in the case was right or wrong, the case demonstrates that the position taken by defendant that the use tax on Rig 20 was properly assessed is entitled to some respect and cannot be discarded out of hand.
*1032 Both sides called tax attorney specialists with outstanding qualifications and were presumably prepared to elicit opinions on both sides of the issues. Unfortunately, the court ruled that such evidence was inadmissible because it was the court's function to decide this legal issue. The evidence was admissible if not on the issue of whether the tax was due or not then on the issue of whether Oreck's conduct in recommending a negotiated settlement with the tax collector constituted malpractice or not.
It is significant that Ray Mestayer, the first tax specialist plaintiff consulted after paying the tax, did not raise the possibility of the casual sale exemption. Rather, he advised plaintiff that the tax was not due for two other reasons which turned out to be invalid.
An attorney is obligated to exercise at least that degree of care, skill, and diligence which is exercised by prudent practicing attorneys in his locality; but he is not required to exercise perfect judgment in every instance. Ramp v. St. Paul Fire and Marine Insurance Company, 263 La. 774, 269 So.2d 239 (1972). In instances where legal issues are not definitely resolved by legislation or jurisprudence an attorney may not be held liable for malpractice as long as his determination of the question, whether ultimately proved right or wrong, is based upon reasonable consideration of applicable legal rules or principles. Muse v. St. Paul Fire and Marine Insurance Company, 328 So.2d 698 (La. App. 1st Cir.1976). We find that the following from Smith v. St. Paul Fire & Marine Insurance Company, 366 F.Supp. 1283 (M.D.La.1973), affirmed 500 F.2d 1131 (5th Cir.1974), is a correct statement of the law:
"The question is not whether or not the advice given was, by hindsight, correct, but rather whether or not the advice given was the result of the proper exercise of skill and professional judgment under the conditions existing at the time the advice was given."
Applying these principles to the instant case it does not appear that we are obliged to decide whether plaintiff would have ultimately prevailed or not had it paid the assessment under protest and filed suit to recover the payment. Suffice it to say that the issue is complex and close. We could easily conclude that the reasoning of our brothers on the Fifth Circuit in the Delta Serv. Industries applies to the instant case with the result that plaintiff owed the tax. However, we find that plaintiff was in this situation when it consulted Oreck: It was faced with a $235,000 tax bill due the following day. If it paid under protest and sued to recover the payment it faced not only the loss of the $235,000 but attorney fees in favor of the tax collector and substantial fees for its own attorney. Considering that its chances of success in such a suit were not good, Oreck's advice to settle for $130,000 was good under the circumstances and still seems good in retrospect.
Plaintiff's reliance on Jenkins v. St. Paul Fire and Marine Ins. Co., 422 So.2d 1109 (La.1982) is misplaced. There the court held that in the situation where an attorney has negligently allowed a claim to prescribe the burden was on the attorney to prove that the client would have lost the case even if it had been timely filed. The prior jurisprudence which placed the burden on the client to prove the tort case within his case of malpractice was overruled. In that situation negligence on the part of the attorney has been established he caused the client to lose his right to proceed against the tortfeasor. But in the present case the client never did prove that Oreck gave bad advice. The worst that can be said about Oreck's advice was that it prevented plaintiff from embarking upon a course of action that would have been extremely risky and expensive and probably unsuccessful in the end. On the other hand Oreck's advice seems to have led plaintiff to a reasonable settlement of a fairly strong claim against it.
Accordingly, the judgment appealed from is affirmed.
AFFIRMED.