GAIDRY, J.
|2A former client of an attorney appeals a summary judgment dismissing his legal malpractice action against the attorney. We affirm.
FACTS AND PROCEDURAL HISTORY
The plaintiff-appellant, Don Michael Leonard, and his ex-wife, Cynthia Leonard Probst, were divorced on July 24, 1990. On August 8, 1995, they agreed to entry of a consent judgment in the 24th Judicial District Court for the Parish of Jefferson, relating to the support of their two minor sons. Mr. Leonard was ordered to pay $543.00 per month in support and to provide health insurance coverage for the minors. He was further ordered to pay 75% of extraordinary medical expenses not covered by insurance.[1] Mr. Leonard subsequently became a domiciliary of the State of Mississippi, and Ms. Probst established her domicile in Ponchatoula in Tangipahoa Parish.
On September 16, 2002, venue of the child support proceeding was transferred to the 21st Judicial District Court for the Parish of Tangipahoa. On May 15, 2003, Ms. Probst filed a petition to make the *1254 1995 consent judgment executory and a combined motion for contempt, to increase child support, and for sole custody. The hearing on the motion was fixed for June 23, 2003. Ms. Probst’s attorney attempted to serve Mr. Leonard by certified mail, pursuant to the Louisiana Long Arm Statute, La. R.S. 13:3201, et seq., at his last-known address in Mississippi. In the meantime, the hearing was continued to August 18, 2003. Notices of the certified mail were left at the Mississippi address on June 9, 16, and 24, 2003, but the certified mail was returned to Ms. Probst’s attorney on July 3, 2003, marked “unclaimed.” Ms. Probst’s attorney did not file an affidavit verifying the service by certified |smail, and there was no evidence that Ms. Probst’s attorney served Mr. Leonard with notice of the new hearing date of August 18, 2003.[2]
The hearing on Ms. Probst’s motions proceeded as scheduled on August 18, 2003. Based upon Ms. Probst’s testimony and documentary evidence submitted, the trial court awarded Ms. Probst $36,612.83 in past due medical expenses for the minors. Mr. Leonard’s child support obligation was further increased to $843.00 per month, retroactively to the date the motion was filed, the increase being predicated upon the cost of health insurance to be procured by Ms. Probst directly. The trial court’s judgment, signed on December 2, 2004, also held Mr. Leonard in constructive contempt of court, awarded Ms. Probst sole custody, and terminated Mr. Leonard’s visitation privileges.
In March 2007, Mr. Leonard retained John R. Reeves, a Mississippi attorney, to represent him in proceedings in that state initiated by Ms. Probst to attempt to enforce the 2004 judgment (the “default judgment”). The Mississippi court refused to enforce the default judgment on the grounds that service of process did not meet Mississippi’s procedural due process standards.
On January 31, 2008, Ms. Probst filed a petition in the Louisiana trial court to “reaffirm” the default judgment and a motion for contempt, alleging that Mr. Leonard had failed to pay $20,066.64 in court-ordered child support and $36,612.83 in medical expenses for the minors. Brenda Braud, a Louisiana attorney, filed a motion on Mr. Reeves’s behalf to admit him to practice pro hac vice in the Louisiana child support proceeding. The order granting the motion was signed on March 24, 2008.
14A hearing on Ms. Probst’s petition to reaffirm the default judgment and motion for contempt was apparently scheduled in June 2008. Mr. Reeves appeared on behalf of Mr. Leonard. The trial court evidently ruled that there was no legal basis for the petition, but the hearing on the contempt motion was continued to August 18, 2008. In a letter to Mr. Leonard dated June 22, 2008, advising him of the results of the hearing, Mr. Reeves stated:
The judge advised that the only way to set aside that earlier [default] judgment is by a petition to annul the judgment. I am working on that now and will get it filed in due course....
The hearing date on your ex-wife’s petition [sic] to find you in contempt of court and on your petition to annul the judgment is August 18, 2008 at 9:30 a.m. ... You and I discussed that you might not want to come inside the courthouse because if the judge rejects our petition to annul and grants their petition [sic] to find you in contempt, he might put you in jail right then. If you’re not there he can’t do it.
*1255 Mr. Reeves filed a “Motion to Annul Judgment” on August 15, 2008, seeking the annulment of the default judgment based on lack of proper service and notice of hearing. It was also alleged that the amount of the award for unpaid medical bills was obtained through “inaccurate representations” regarding the amounts actually billed and the amounts actually paid or otherwise credited.
On August 18, 2008, rather than taking evidence and ruling on the pending contempt motion and motion for nullity, the trial court suggested that the parties first attempt to resolve the dispute by negotiation and compromise. The parties and their attorneys then went to the office of Ms. Probst’s attorney, where an agreement was eventually reached that, in lieu of seeking to annul the default judgment, Mr. Leonard would settle Ms. Probst’s claims by paying the sum of $36,000.00 for unpaid monthly child support and medical expenses in monthly installments of $300.00. During the course of the subsequent hearing, the terms of the parties’ agreement | fiwere recited and both parties, upon examination by the trial court, expressed their understanding of and agreement with those terms. The trial court executed a “Stipulated Judgment,” or consent judgment, that day, providing that Mr. Leonard “owes the net sum of [$36,-000.00] to [Ms. Probst] for all claims of back [sic] due child support and medical expenses,” to “be paid at the rate of no less than $300 per month,” and incorporating an income assignment. The consent judgment was prepared by Ms. Probst’s attorney and also signed as “approved” by both parties and Mr. Reeves.
On May 11, 2009, Ms. Probst filed a rule for contempt, alleging that Mr. Leonard had willfully failed to comply with the consent judgment of August 18, 2008. Mr. Leonard, whose representation had been assumed by Ms. Braud, responded with a petition for nullity, seeking to annul the 2004 default judgment and the 2008 consent judgment on the grounds that both were absolute nullities. Specifically, with regard to the latter judgment, Mr. Leonard contended that because it was predicated upon the absolutely null default judgment, his consent was based upon error as to the principal cause underlying the parties’ agreement, thereby rendering the agreement and the consent judgment predicated upon it nullities.
Both Ms. Probst’s rule for contempt and Mr. Leonard’s petition for nullity were assigned for hearing on July 30, 2009. In the course of a pre-hearing conference in chambers, the trial court expressed its opinion that while the default judgment was an absolute nullity, the 2008 consent judgment (the “first consent judgment”) was probably not. The parties and their attorneys then conferred and agreed to compromise the first consent judgment, in the amount of $36,000.00, upon Mr. Leonard’s payment of the sum of $20,000.00 in full within 90 days, or by October 30, 2009. It was further agreed that in default of such payment, the first consent judgment | firemained valid and enforceable. The terms of the compromise were recited on the record, and both parties, under examination by the trial court, expressed their understanding of those terms. On August 24, 2009, the trial court signed its judgment (the “second consent judgment”), prepared by Ms. Braud, incorporating the terms of the compromise, as well as the court’s ruling that the default judgment was an absolute nullity and the first consent judgment was “fully enforceable.” Ms. Probst’s rule for contempt was continued without date pending the satisfaction of the judgment.
Mr. Leonard instituted the present action against Mr. Reeves and his profes *1256 sional liability insurer on August 17, 2009. He alleged that Mr. Reeves was negligent in filing a motion to annul the 2004 default judgment, rather than a petition; in agreeing to negotiate Ms. Probst’s claims instead of proceeding to the hearing on the motion to annul; and in advising Mr. Leonard to enter into the first consent judgment on that date, despite having been provided with documentation that all monthly child support due under the 1995 judgment had been paid and that Mr. Leonard had maintained health insurance on the minors. Mr. Reeves and his insurer answered the petition, denying liability.
On December 15, 2010, Mr. Reeves and his insurer filed a motion for summary judgment, contending that Mr. Leonard could not demonstrate that Mr. Reeves’s actions constituted legal malpractice and that he suffered any damages caused by such actions.
The motion for summary judgment was heard on January 31, 2011. Following argument of counsel, the trial court granted the motion. The trial court’s judgment was signed on February 10, 2011, dismissing Mr. Leonard’s claims with prejudice. Mr, Leonard appeals, contending that the [7trial court erred in finding no genuine issue of material fact and in granting summary judgment on that basis.
ISSUES PRESENTED FOR REVIEW
Mr. Leonard urges that we consider the following issues in the determination of this appeal:
Whether [Mr. Reeves] had the duty to file a [petition for [n]ullity to seek the nullification of a prior judgment against [Mr. Leonard], rather than filing a [m]otion for [n]ullity.
Whether [Mr. Reeves] had a duty to review alleged medical bills with his client before advising him that they were due, and using this determination as the basis for advising [Mr. Leonard] to enter into a compromise agreement.
Whether, in an action for malpractice, where [the client] alleges that he did not owe any medical bills, and [the attorney] alleges that [the client] did owe bills, [the client] bears the burden of proving that he did not owe money, or [the attorney] bears the burden of proving that [the client] did owe the money.
Whether a fact question exists as to the existence of any debt by [Mr. Leonard] to his ex-wife that would have formed a legitimate basis for compromise.
Whether [Mr. Reeves] performed his duty as legal counsel for [Mr. Leonard.]
LAW AND ANALYSIS

Standard of Review and General Principles of Summary Judgment

Summary judgment is subject to de novo review on appeal, using the same standards applicable to the trial court’s determination of the issues. Berard v. L-3 Communications Vertex Aerospace, LLC, 09-1202, p. 5 (La.App. 1st Cir.2/12/10), 35 So.3d 334, 339-40, writ denied, 10-0715 (La.6/4/10), 38 So.3d 302. The summary judgment procedure is expressly favored in the law and is designed to secure the just, speedy, and inexpensive determination of non-domestic civil actions. La. C.C.P. art. 966(A)(2). Its purpose is to pierce the pleadings and to assess the proof in [sorder to see whether there is a genuine need for trial. Hines v. Garrett, 04-0806, p. 7 (La.6/25/04), 876 So.2d 764, 769. Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, admissions, and affidavits in the record show that there is no genuine *1257 issue as to material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(B).
The mover has the burden of proof that he is entitled to summary judgment. See La. C.C.P. art. 966(C)(2). If the mover will not bear the burden of proof at trial on the subject matter of the motion, he need only demonstrate the absence of factual support for one or more essential elements of his opponent’s claim, action, or defense. La. C.C.P. art. 966(C)(2). If the moving party points out that there is an absence of factual support for one or more elements essential to the adverse party’s claim, action, or defense, then the nonmoving party must produce factual support sufficient to satisfy his evidentiary burden at trial. La. C.C.P. art. 966(C)(2). If the mover has put forth supporting proof through affidavits or otherwise, the adverse party may not rest on the mere allegations or denials of his pleading, but his response, by affidavits or otherwise, must set forth specific facts showing that there is a genuine issue for trial. La. C.C.P. art. 967(B).

The Standard of Care

A claim for legal malpractice is stated when the plaintiff alleges that there was an attorney-client relationship, the attorney was guilty of negligence or professional impropriety in his relationship with the client, and the attorney’s misconduct caused the client some loss. Prestage v. Clark, 97-0524, p. 9 (La.App. 1st Cir.12/28/98), 723 So.2d 1086, 1091, writ denied, 99-0234 (La.3/26/99), 739 So.2d 800. But a client can have no greater rights against his attorney for the negligent handling of the client’s |flclaim (or, as here, the client’s defense) than were available in the underlying action or dispute. See Costello v. Hardy, 03-1146, pp. 9-10 (La.1/21/04), 864 So.2d 129, 138.
The standard of care that an attorney must exercise in the representation of a client is that degree of care, skill, and diligence that is exercised by prudent practicing attorneys in his locality. Ramp v. St. Paul Fire & Marine Ins. Co., 263 La. 774, 786, 269 So.2d 239, 244 (La.1972); Frisard v. State Farm Fire & Cas. Co., 06-2353, pp. 5-6 (La.App. 1st Cir.11/2/07), 979 So.2d 494, 497. He is not required to exercise perfect judgment in every instance. However, the attorney’s license to practice in Louisiana (including a limited pro hoc vice admission) and his contract for employment hold out to the client that he possesses certain minimal skills, knowledge, and abilities. Ramp, 263 La. at 786, 269 So.2d at 244.
The legal standard of care may vary depending upon the particular circumstances of the relationship. Teague v. St. Paul Fire & Marine Ins. Co., 06-1266, p. 25 (La.App. 1st Cir.4/7/09), 10 So.3d 806, 825, writ denied, 09-1030 (La.6/17/09), 10 So.3d 722. For example, our courts have recognized that the extent of an attorney’s duty to a client may depend, in part, on the client’s particular circumstances and situation. Prestage, 97-0524 at p. 9, 723 So.2d at 1091.
Proof of the violation of an ethical rule by an attorney, standing alone, does not constitute actionable legal malpractice per se or proof of factual causation. See Teague, 06-1266 at p. 26, 10 So.3d at 825. However, the Rules of Professional Conduct will usually be relevant in defining the legal standard of care, which may vary depending upon the particular circumstances of the relationship. Id. We will therefore examine those rules applicable to the negligent acts alleged by Mr. Leonard.
|10The Rules of Professional Conduct are set forth in Article 16 of the articles of incorporation of the Louisiana State Bar Association. Rule 1.1(a) provides that:
*1258 A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation.
Rule 1.3 provides that “[a] lawyer shall act with reasonable diligence and promptness in representing a client.” Under this rule, an attorney owes his client the duty of diligent investigation and research. Prestage, 97-0524 at p. 9, 723 So.2d at 1091.
Rule 1.4 provides, in pertinent part, that:
(a) A lawyer shall:
(1) promptly inform the client of any decision or circumstance with respect to which the client’s informed consent, as defined in Rule 1.0(e), is required by these Rules;
(2) reasonably consult with the client about the means by which the client’s objectives are to be accomplished;
(3) keep the client reasonably informed about the status of the matter;
(4) promptly comply with reasonable requests for information; ...
[[Image here]]
(b) The lawyer shall give the client sufficient information to participate intelligently in decisions concerning the objectives of the representation and the means by which they are to be pursued.
Rule 1.0(e), referenced above, defines “informed consent” as follows:
(e) “Informed consent” denotes the agreement by a person to a proposed course of conduct after the lawyer had communicated adequate information and explanation about the material risks of and reasonably available alternatives to the proposed course of conduct.
| nRule 1.2 further provides, in pertinent part, that:
(a) Subject to the provisions of Rule 1.16 and to paragraphs (c) and (d) of this Rule, a lawyer shall abide by a client’s decisions concerning the objectives of representation, and, as required by Rule 1.4, shall consult with the client as to the means by which they are to be pursued. A lawyer may take such action on behalf of the client as is impliedly authorized to carry out the representation. A lawyer shall abide by the client’s decision whether to settle a matter....
(Emphasis added.)
The verification of Mr. Reeves’s pro hac vice application, signed by both Mr. Reeves and Ms. Braud, affirmed that they were “familiar with the Louisiana Rules of Professional Conduct, the rules of discipline of the Louisiana Attorney Disciplinary Board, and the local rules and court procedures of the court or agency before which the applicant is seeking to practice.”

Was the Burden of Proof of Causation Shifted to the Attorney?

Mr. Leonard contends that in this legal malpractice matter, Mr. Reeves bore the burden of proving that there were unpaid extraordinary medical expenses owed by Mr. Leonard, justifying the legal advice given. Thus, he contends that Mr. Reeves, as the mover bearing the burden of proof at trial on the issue of causation, was required to demonstrate the absence of any genuine issue of fact on that issue in order to be entitled to summary judgment. See La. C.C.P. art. 966(C)(2).
In the case of Jenkins v. St. Paul Fire & Marine Ins. Co., 422 So.2d 1109 (La.1982), our supreme court modified the former “case within a case” evidentiary burden of proof in legal malpractice cases. The “case within a case” approach, as its name implied, required a plaintiff in a legal malpractice case to not only prove his for *1259 mer attorney’s negligence in handling the underlying legal matter, but also that the underlying claim or 112litigation would have been successful but for the attorney’s negligence. Id. at 1109-10. The defendant attorneys in Jenkins failed to file suit on their client’s personal injury claim until two days after prescription had run.
The supreme court summarized its holding in Jenkins as follows:
[W]hen the plaintiff (as in this case) proves that negligence on the part of his former attorney has caused the loss of the opportunity to assert a claim and thus establishes the inference of causation of damages resulting from the lost opportunity for recovery, an appellate court (viewing the evidence on the merits of the original claim in the light most favorable to the prevailing party in the trial court) must determine whether the negligent attorney met his burden of producing sufficient proof to overcome plaintiffs prima facie case.
Id. at 1110. Application of the foregoing rule in effect provides a presumption of cause-in-fact in favor of the client. See 21 Frank L. Maraist, et al., Louisiana Civil Law Treatise: Louisiana Lawyering § 18.5 at p. 375 (2007; 2011 Supp.).
By its own terms, the Jenkins rationale is applicable only to “such a situation” as was involved in that case, i.e., the final or complete loss of an opportunity to assert a legal claim (or, conversely, to present a defense) caused by an attorney’s negligent failure to comply with the applicable procedural standards or constraints. Jenkins, 422 So.2d at 1110. The Jenkins rule does not necessarily apply to all situations of alleged legal malpractice, as confirmed by subsequent jurisprudence. See, e.g., Rawboe Properties, L.L.C v. Dorsey, 06-0070, pp. 9-10 (La.App. 4th Cir.3/21/07), 955 So.2d 177, 182-83, writ denied, 07-0763 (La.6/1/07), 957 So.2d 178. In League, we held that the Jenkins rule did not apply in the specific context of that case, ie., “where the [client], an insured, is claiming the loss of an opportunity to defend a monetary claim, the immediate cause of such lost opportunity being the independent decision of the [client’s] insurer to settle 11Rthe adverse claim within its policy’s monetary liability limits[.]” Teague, 06-1266 at p. 28, 10 So.3d at 826.
In the context of the present action, the plaintiff client is claiming the loss of an opportunity to successfully defend a monetary claim against him, the immediate cause of such lost opportunity and the resulting adverse result being the client’s decision (allegedly based solely upon the attorney’s bad advice and malpractice) to compromise the adverse claim. We conclude that although the Jenkins rule could conceivably apply under these facts, Mr. Leonard is ultimately not entitled to the benefit of its presumption of causation and damages, as he failed to establish the predicate prima facie case, for the reasons explained below.

Did the Use of the Motion for Nullity Constitute Malpractice?

Mr. Leonard’s allegations of Mr. Reeves’s negligence are initially premised on the proposition that the filing of a procedurally improper pleading, a motion for nullity, essentially deprived Mr. Leonard of the opportunity to successfully defend all of Ms. Probst’s claims and forced him into a disadvantageous compromise under the threat of a possible contempt order. This initial premise, however, is erroneous, for the following reasons.
The nullity of a final judgment may be demanded for vices of either form or substance. La. C.C.P. art. 2001. A vice of form renders the judgment an absolute nullity. See La. C.C.P. art. 2002, Official Revision Comments-1960, (f). In contrast *1260 to a vice of form, a vice of substance gives rise only to relative nullity. Bernard v. Fireside Commercial Life Ins. Co., 633 So.2d 177, 184, writ denied, 93-3170 (La.3/11/94), 634 So.2d 839.
A judgment rendered “[ajgainst a defendant who has not been served with process as required by law and who has not waived objection to jurisdiction, or against whom a valid judgment by default has not been 114taken,” is subject to an action for nullity for a vice of form. La. C.C.P. art. 2002(A)(2). This was the vice of form raised by the motion to annul judgment filed on Mr. Leonard’s behalf by Mr. Reeves.
It is quite true, as asserted by Mr. Leonard, that an action to annul a judgment is not expressly included in the exclusive list of matters that may be disposed of through summary proceedings. See La. C.C.P. art. 2592. Our courts have repeatedly held than an action for nullity based upon a vice of substance (fraud or ill practices) should be instituted by petition, with citation and proper service of process, utilizing an ordinary proceeding, rather than a summary proceeding or a contradictory motion or rule to show cause. See Nethken v. Nethken, 307 So.2d 563, 565 (La.1975), and Knight v. Sears, Roebuck & Co., 566 So.2d 135, 137 (La.App. 1st Cir.), writ denied, 571 So.2d 628 (La.1990).
An action to annul a judgment for a vice of form, however, may be brought by an interested person at any time, before any court, and through a collateral proceeding. See La. C.C.P. art. 2002(B) and Smith v. LeBlanc, 06-0041, p. 6 (La.App. 1st Cir.8/15/07), 966 So.2d 66, 71. A “collateral attack” is an attempt to impeach the decree or judgment from one proceeding in another proceeding not instituted for the express purpose of annulling the judgment. Smith, 06-0041 at p. 5 n. 2, 966 So.2d at 71 n. 2. Such a collateral proceeding includes the assertion of the absolute nullity of a judgment as an affirmative defense, such as in an answer or by exception. Id., 06-0041 at pp. 6-7, 966 So.2d at 72; see also Gilbert v. Pearson, 478 So.2d 937, 939 (La.App. 3rd Cir.1985), writ denied, 482 So.2d 629 (La.1986).
It seems only reasonable, then, that an absolutely null judgment may also be collaterally attacked by procedural means short of a petition for 116nullity, such as a contradictory motion or rule. In fact, this is what the courts have consistently held. See Standard Mach. Co., Inc. v. Melancon-Bourgeois Lumber Co., 60 So.2d 238, 239-40 (La.App. 1st Cir.1952) (exception); Schniebolk v. Goldstein, 409 So.2d 1250, 1251 (La.App. 4th Cir.1982) (summary motion); Fritz v. Whitfield, 499 So.2d 962 (La.App. 3rd Cir.1986) (per curiam) (contradictory motion); Bryant v. Pierson, 583 So.2d 97, 99-100 (La.App. 3rd Cir.1991) (motion to vacate); Estate of Bradford v. Thomas, 29.807, p. 4 (La.App. 2nd Cir.9/24/97), 700 So.2d 1030, 1033 (exception); Anderson v. Anderson, 98-1012, p. 2 (La.App. 4th Cir.8/26/98), 718 So.2d 582, 583 (rule); Pollock v. Talco Midstream Assets, Ltd., 44,269, pp. 4-9 (La. App. 2nd Cir.9/23/09), 22 So.3d 1033, 1036-39 (motion for new trial).[3]
Thus, Mr. Leonard is incorrect in contending that Mr. Reeves could not have properly raised the issue of the absolute nullity of the default judgment by a procedural vehicle other than a petition. Mr. Reeves’s use of a motion to challenge the default judgment was procedurally proper *1261 and did not constitute malpractice.[4] Mr. Leonard therefore retained the initial burden of establishing a prima facie case of loss due to the other alleged malpractice: Mr. Reeves’s alleged negligent failure to investigate the merits of Ms. Probst’s claims for unpaid and past due child support and medical expenses and his consequent bad advice to compromise.
| wWere the Compromise and First Consent Judgment Vitiated by Duress?
Before we examine the issues relating to the alleged bad advice, we must examine the context in which that advice was given, as Mr. Leonard claims that due to Mr. Reeves’s alleged negligence, he was confronted with “the false choice of going to jail” or entering into “an ill-advised [stipulated judgment.” That is, Mr. Leonard argues that he was exposed to duress in the form of an impending threat of being wrongfully held in contempt of court and incarcerated, despite clear evidence of his compliance with the terms of the 1995 judgment, and that Mr. Reeves’s negligence “plac[ed] him in a position to have to negotiate.”
A consent judgment is a bilateral contract by which the parties adjust their differences by mutual consent, with each party balancing his hope of gain against his fear of loss. Hebert v. Drewitz, 09-0798, p. 3 (La.App. 1st Cir.10/27/09), 29 So.3d 607, 608. Its binding force arises from the voluntary acquiescence of the parties, rather than the adjudication by the court. Id. A consent judgment may be annulled or rescinded for an error of fact or error of the principal cause of the agreement. Id.
Consent is vitiated when it has been obtained by duress of such a nature as to cause a reasonable fear of unjust and considerable injury to a party’s person, property, or reputation. La. C.C. art. 1959. (Emphasis added.) Consent is vitiated even when duress has been exerted by a third person. La. C.C. art. 1961. Generally, in the present context, “duress” means “a threat of harm made to compel a person to do something against his or her will or judgment” or, more specifically, “a wrongful threat made by one person to compel a manifestation of seeking assent by another person to a transaction without real volition.” Black’s Law Dictionary 542 (8th ed.2004). (Emphasis added.) “Duress of imprisonment” is defined as “[t]he 117wrongful confining of a person to force the person to do something.” Id. (Emphasis added.) See La. C.C. art. 1959, Revision Comments — 1984, (b).
Inherent in the foregoing definitions is the element of lack of legal justification, or wrong, behind the threat or action. If Mr. Leonard had any real apprehension of incarceration for contempt of court, such could only have been based upon: (1) the court’s inherent authority to enforce its lawful judgments; and (2) Ms. Probst’s legal right to seek such redress for any proven willful violation of such judgments on Mr. Leonard’s part. This simply does not, by definition, constitute duress for purposes of vitiating his consent to entry of judgment. A threat of doing a lawful *1262 act or a threat of exercising a right does not constitute duress. La. C.C. art. 1962.
As emphasized by Mr. Reeves, the transcript of the hearing relating to entry of the first consent judgment shows that Mr. Leonard expressed his understanding of and consent to its terms. Based upon our de novo review of the record, we conclude that Mr. Leonard has not demonstrated any genuine factual issue as to any alleged duress exerted by either Ms. Probst, the trial court, or Mr. Reeves, or lack of voluntary consent on his part. See City of Baton Rouge v. Douglas, 07-1153, pp. 6-7 (La.App. 1st Cir.2/8/08), 984 So.2d 746, 749-50, writ denied, 08-0939 (La.6/20/08), 983 So.2d 1284, and Shultz v. Shultz, 02-2534, pp. 4-5 (La.App. 1st Cir.11/7/03), 867 So.2d 745, 747-48.

Bad Advice and Causation

Attorneys are obligated to scrutinize any contract that they advise their clients to execute, and are required to disclose the full import of the agreement and the possible consequences that may arise upon execution of it. Ramp, 263 La. at 786, 269 So.2d at 244. Conversely, while a client certainly has the right to rely upon the informed advice of his attorney, an 11Rattorney has the reciprocal right to expect accurate and complete information from his client in formulating such advice and presenting his client’s case. See, e.g., Brown v. Sanders, 06-1171, p. 5 (La.App. 1st Cir.3/23/07), 960 So.2d 931, 935.
As observed by our supreme court, “[t]he very fact of litigation is a result of the disparity of professional judgment of those in the legal profession.” Ramp, 263 La. at 786, 269 So.2d at 244. In determining whether incorrect advice rises to actionable legal malpractice, the question is not whether or not the advice given was, by hindsight, correct, but rather whether or not the advice given was the result of the proper exercise of skill and professional judgment under the conditions existing at the time the advice was given. Quarles Drilling Corp. v. Gen. Accident Ins. Co., 538 So.2d 1029, 1032 (La. App. 4th Cir.), writ denied, 541 So.2d 856 (La.1989), citing Smith v. St. Paul Fire & Marine Ins. Co., 366 F.Supp. 1283, 1286 (M.D.La.1973), aff'd, 500 F.2d 1131 (5th Cir.1974). Again, we emphasize that in order to have the benefit of the Jenkins rule, and to in turn shift to Mr. Reeves the burden of proving that there was no genuine issue of material fact as to causation of “some loss,” Mr. Leonard was required to meet the threshold burden of showing that Mr. Reeves’s advice to settle the claim was in fact bad advice, founded upon his alleged malpractice in failing to properly investigate and competently evaluate the claim, and that, but for such bad advice, he would not have lost the opportunity to successfully defend Ms. Probst’s claims against him.
The proper method of determining whether an attorney’s malpractice is a cause-in-fact of damage to his client is whether the performance of that act would have prevented the damage. Prestage, 97-0524 at p. 9, 723 So.2d at 1091. Thus, simply establishing that an attorney was negligent, whether | abased upon the failure to conform to an ethical rule or some other standard, would not be sufficient to state a cause of action for legal malpractice. See Exec. Recruitment, Inc. v. Guste, Barnett & Shushan, 533 So.2d 129, 131 (La.App. 4th Cir.1988), writ denied, 535 So.2d 742 (La.1989). In Teague, 06-1266 at p. 47, 10 So.3d at 836, we cited the following language from Purdy v. Pacific Auto. Ins. Co., 157 Cal.App.3d 59, 203 Cal. Rptr. 524 (Cal.App.1984), which is relevant to the issue of causation in a legal malpractice case predicated upon alleged bad advice:
*1263 A lawyer cannot properly compel a client to take his or her advice; a lawyer can strongly advise action by a client, action highly beneficial to the client or others, action clearly indicated by known facts, but there is no duty on the part of the client to follow the lawyer’s lead— that is not the nature of the relationship, assuming that the client is legally capable of acting on his own behalf.
Purdy, 157 Cal.App.3d at 77-8, 203 Cal. Rptr. at 534-35.
The element of legal causation, in addition to causation in fact, must also be proven under the duty-risk analysis. Its importance in a legal malpractice action has been emphasized as follows:
As in any tort claim, the plaintiff in a malpractice claim must establish that the attorney’s breach was not only the factual cause but also the legal cause of any injury. Legal or proximate cause, or scope of duty, normally does not present a significant or serious problem in a legal malpractice case. However, the issue does arise.... In sum, the legal cause issue, like so many duty/risk or legal cause issues under Louisiana tort law, is an important one that should not be ignored. However it may provide practical and intellectual challenges to the client, lawyer, judge, and jury.
21 Frank L. Maraist, et al, Louisiana Civil Law Treatise: Louisiana Lauxyering § 18.5 at pp. 375-76 (2007).
In his supporting affidavit, Mr. Reeves described the negotiations that formed the basis of the first consent judgment. He emphasized that he informed Ms. Probst’s counsel that he was confident that the default |2njudgment was an absolute nullity. Ms. Probst’s counsel countered by stating that even if the default judgment was absolutely null, Ms. Probst was nevertheless prepared to pursue her prior claims for $20,066.64 in past due child support and $36,612.83 in unpaid medical expenses, exclusive of attorney fees and costs. Mr. Reeves additionally attested to the following facts:
At no time during the negotiations [of August 18, 2008] did Leonard claim that he had paid his child support obligations in full; and Leonard even conceded that he was in arrearage because at times he was not earning enough to meet his child support obligations, and was never able to make up the difference.
The parties and their attorneys reviewed, closely examined and compared all the child support payments Probst claimed were in arrearage to what Leonard claimed he had paid, and arrived at a balance due of $15,627.83.
Probst provided medical invoices to support her claims regarding the $36,612.83 in medical expenses she paid, none of which had been paid by private insurance and/or Medicaid, as a large portion of the medical bills were for psychiatric care, which Medicaid and/or insurance refused to pay for, of one of the minor children, who had a mental disability due to allegedly being abused by Mr. Leonard.
Although Leonard claimed that he maintained health insurance on his minor children, he either never advised Probst of this, never furnished her with proof of insurance so that she could use the coverage, and/or provided her with the insurance information, only to have her find out a few weeks later, that the coverage had been cancelled.
[[Image here]]
At no time during [Mr. Reeves’s] representation of Leonard, did Leonard ever advise, state[,] or claim that he had paid all of his child support payments in full and that he was not in arrears for any child support payments.
*1264 Leonard fully participated in the negotiation/mediation, and willingly and voluntarily agreed to the Consent/Stipulation [sic ] Judgment.
|21The substance of Mr. Reeves’s affidavit was corroborated in the foregoing respects by the affidavit of Brett K. Duncan, the attorney representing Ms. Probst at the time of the first consent judgment.
In his affidavit, submitted in opposition to the motion for summary judgment, Mr. Leonard simply verified the allegations of his petition as true and correct, and added the following:
The Louisiana court instructed Reeves to file a Petition to Annul the judgment. This was confirmed in a letter sent to Affiant by Reeves on June 22,2008....;
Reeves did not file the proper pleading, and so failed to nullify the judgment prior to, or at the time of the August 18, 2008 hearing;
Affiant provided documentation to Reeves that he was current in all child support obligations arising out of the August 8,1995 Consent Judgment;
Affiant agreed to the terms of the August 18, 2008 judgment on advice of Reeves.
We note that Mr. Leonard’s statement that Mr. Reeves “did not file the proper pleading” is not only legally incorrect, but also amounts to a mere legal conclusion or opinion on the part of a layman rather than a statement of fact. In her affidavit, Ms. Braud simply stated that the default judgment was an absolute nullity (a fact undisputed by the parties), that Mr. Reeves filed a motion for nullity rather than a petition for nullity (also an undisputed fact), and that on August 18, 2008, Mr. Leonard entered into the first consent judgment “in satisfaction of the absolutely null judgment” on the advice of Mr. Reeves.[5]
| g?The affidavits of Mr. Leonard and Ms. Braud fail to adequately rebut the affidavits of Mr. Reeves and Mr. Duncan and to “set forth specific facts showing that there is a genuine issue for trial” on the material facts relating to his claim against Mr. Reeves. See La. C.C.P. art. 967(B). At best, Mr. Leonard’s affidavit and the factual allegations of his petition simply establish that there was a genuine factual dispute between him and Ms. Probst as to whether his child support obligations, including payment of extraordinary medical expenses, were current as of August 18, 2008. That dispute was the basis for the compromise and consent judgments to which those parties agreed. It does not serve to establish a genuine factual dispute as to the issue of whether Mr. Reeves’s advice constituted malpractice. Significantly, even if Mr. Leonard had in fact paid all of his monthly support obligations due under the 1995 consent judgment, the extraordinary medical expenses claim of $36,612.83, supported as attested to by Mr. Reeves and Mr. Duncan, provided a basis for a valid compromise.[6] Additionally, Mr. Leonard’s affidavit must be read together with and in light of his sworn testimony at *1265 the consent judgment hearing on August 18, 2008, in which he affirmed his consent and agreement to the content of the first consent judgment, the factual stipulations forming the basis of that judgment, and his acknowledgment of the debt represented by that judgment.
In short, Mr. Leonard has failed to demonstrate any valid factual basis to “second-guess” Mr. Reeves’s professional advice regarding the compromise; he has not shown that he can prove that the advice was bad advice. See Quarles Drilling Corp., 538 So.2d at 1032. Mr. Leonard has failed to show that the final result in the trial court on the support claim after an evidentiary hearing on August 18, 2008, would more likely than not have jabeen more favorable to him, but for the alleged acts of legal malpractice.
Additionally, the ultimate decision to compromise the child support claim and to satisfy the first consent judgment by consenting to the second rested with Mr. Leonard, and he failed to put forth any affirmative evidence at the summary judgment hearing that his ultimate decision to do so and his alleged loss of $20,000.00 to satisfy the first consent judgment would have otherwise been avoided. It is well settled that the law favors compromise and voluntary settlement of disputes out of court with the attendant saving of time and expenses to both the litigants and the court. Honeycutt v. Town of Boyce, 341 So.2d 327, 331 (La.1976). In other words, it has long been the public policy of this state that the compromise of disputes is highly favored and promotes judicial efficiency. Teague, 06-1266 at p. 16, 10 So.3d at 819.
As we observed in Teague:
The parties to a contract of compromise of a ... claim are the parties involved in the claim and any related litigation. While those parties may act through attorneys, their attorneys are not parties to their agreement. The ultimate decision to enter into a compromise belongs to the parties, not their legal counsel.
Teague, 06-1266 at p. 47, 10 So.3d at 836-37.
Here, the supposed loss of Mr. Leonard’s ultimate opportunity to defend himself, and the resulting debt of $20,000.00, was causally removed two times from the alleged malpractice through the two agreements of compromise that he made. His net loss of $20,000.00 was the product of the second compromise and consent judgment, negotiated by Ms. Braud, another attorney.[7] Mr. Leonard failed to put forth any evidence tending to ^establish that he was somehow prevented from introducing available evidence or testimony to controvert the claimed debt of $36,000.00 in the first consent judgment. Accordingly, the immediate cause of Mr. Leonard’s lost opportunity to controvert the child support claim was his own voluntary action.
Mr. Leonard has failed to meet his burden of persuasion on the required element of factual causation, or cause-in-fact. See, e.g., Exec. Recruitment, 533 So.2d at 131. Consequently, the required element of le *1266 gal causation is clearly lacking. See, e.g., Teague, 06-1266 at pp. 51-2, 10 So.3d at 839, citing Bauer v. Dyer, 00-1778, pp. 14-15 (La.App. 5th Cir.2/28/01), 782 So.2d 1133, 1141, writ denied, 01-0822 (La.5/25/01), 793 So.2d 162.
CONCLUSION
In summary, Mr. Leonard failed to produce factual support sufficient to establish that he would probably be able to satisfy his evidentiary burden of proof as to the essential elements of actionable professional negligence (malpractice) and causation of his claimed damages. Based upon our de novo review of the record, summary judgment was therefore appropriate. The judgment of the trial court is affirmed. All costs of this appeal are assessed to the plaintiff-appellant, Don Michael Leonard.
AFFIRMED.

. The judgment defined such "extraordinary” medical expenses as those uncovered expenses exceeding $100.00 per child per month.

. See La. R.S. 13:3205.

. Absolute nullity of a judgment is thus ”[a]n issue which may be raised properly by an exception, contradictory motion, or rule to show cause” and therefore appropriate for summary proceeding. See La. C.C.P. art. 2592(3).

. Further, a judgment or order denying the motion for nullity on procedural grounds would not only have been legally incorrect, but would not have precluded the filing of a subsequent petition (or even another motion), as such a judgment or order would not have addressed the issue of nullity on the merits and therefore would not have constituted a final judgment for purposes of appeal. This circumstance is self-evident by virtue of the very fact that Mr. Leonard filed a subsequent petition for nullity and the trial court ultimately ruled, as part of the second consent judgment, that the default judgment was an absolute nullity.

. Ms. Braud’s statement concerning the negotiated basis of the first consent judgment was not, on its face, "made on personal knowledge,” as she also stated in her affidavit that Mr. Reeves failed to notify her, as sponsoring attorney for his pro hac vice admission, of any hearing date in the child support matter. See La. C.C.P. art. 967(A). In contrast, both Mr. Reeves and Mr. Duncan were indisputably present during the negotiations and subsequent hearing in which the compromise terms were acknowledged and made the judgment of the court.

. Mr. Reeves emphasizes that Mr. Leonard’s opposition affidavit fails to address the issue of unpaid extraordinary medical expenses.

. The assistance of legal counsel in the evaluation of a settlement and the determination of available options is a circumstance to be considered when deciding if consent was freely given. City of Baton Rouge v. Douglas, 07-1153, p. 7 n. 2 (La.App. 1st Cir.2/8/08), 984 So.2d 746, 750 n. 2, writ denied, 08-0939 (La.6/20/08), 983 So.2d 1284. Even if Mr. Reeves’s advice relating to the first consent judgment was somehow negligent, Mr. Leonard would still be limited to recovery of only the ultimate debt of $20,000.00 represented by the second consent judgment. See Prince v. Buck, 06-1603, pp. 5-7 (La.App. 4th Cir.5/16/07), 969 So.2d 641, 644-45.